IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11–cv–02050–PAB–KMT

MICHAEL KEITH TIVIS,

     Plaintiff,

v.

MS. JOANN STOCK (PHYSICIAN ASSISTANT), in both her official and individual
capacities,
MR. KEVIN MILYARD (WARDEN), in both his official and individual capacities, and
MS BEVERLY DOWIS (MEDICAL ADMINISTRATOR), in both her official and individual
capacities,

     Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

This matter is before the court on a number of motions pending in this case.  Specifically,

the court considers herein: Plaintiff's Motion to File a Supplemental Complaint[1] (Doc. No. 22,

filed Dec. 14, 2011 [Mot. Supp. Compl.]); Defendants' "Motion to Dismiss" (Doc. No. 29, filed

Jan. 6, 2012 [Mot. Dismiss]); Plaintiff's First "Motion for Summary Judgment" (Doc. No. 31,

filed Jan. 13, 2012 [First Mot. Summ. J.]); Defendants' "Motion to Strike Plaintiff's [First]

Motion for Summary Judgment" (Doc. No. 35, filed Feb. 3, 2012 [First Mot. Strike]); Plaintiff's

Second "Motion for Summary Judgment" (Doc. No. 43, filed Feb. 29, 2012 [Second Mot.

---

[1] This document is actually entitled "Supplemental Complaint."  (*See id.*)  However,
because Plaintiff plainly "moves the court for leave to file a Supplemental Complaint," the court
construes this document as a Motion to File a Supplemental Complaint.

Summ. J.]); Defendants' "Motion to Strike Plaintiff's [Second] Motion for Summary Judgment" (Doc. No. 48, filed Mar. 20, 2012 [Second Mot. to Strike]); and, finally, Plaintiff's "Motion to Justify Summary Judgment" (Doc. No. 50, filed Mar. 27, 2012 [Third Mot. Summ. J.]), which the court construes to be an additional Motion for Summary Judgment.

For the following reasons, the court recommends that Defendants' Motion to Dismiss be granted, Plaintiff's three Motions for Summary Judgment be denied, Defendants' Motions to Strike be denied as moot, and Plaintiff's Motion to File a Supplemental Complaint be denied.

## FACTUAL BACKGROUND

The following factual background is derived from Plaintiff's "Prisoner Complaint" (Doc. No. 1, filed Aug. 5, 2011 [Compl.]) and the parties' briefing with respect to this Recommendation. Plaintiff maintains that Defendants violated his rights under the First, Eighth, and Fourteenth Amendments to the United States Constitution.

On November 20, 2008, Plaintiff was transferred from the Arkansas Valley Correctional Facility (AVCF) in Crowley, Colorado to the Sterling Correctional Facility (SCF) in Sterling, Colorado, because it was determined that he had a "mobility/disability impairment" and, "as a [sic] ADA accommodation resolution," he was to be placed in an ADA designated facility. (Compl. at 3.) Shortly after arriving at SCF, Plaintiff was assigned to work in SCF's kitchen as a maintenance worker, where he "scrubbed ovens and walls." (*Id.*) Plaintiff explained to "kitchen staff Lieutenant Fiscus" that he was scheduled for total hip replacement surgery and that he was in too much pain to complete the tasks assigned to him. (*Id.*) Lieutenant Fiscus allegedly told Plaintiff that "he didn't have a choice in the matter and that it was'nt [sic] her job to commodate

[sic] him." (*Id.*)  After Plaintiff again protested that he was disabled and in too much pain to complete his assigned tasks, Lieutenant Fiscus "gave the Plaintiff a Class II disciplinary report for failure to work." (*Id.*)  After a hearing, Plaintiff was found guilty of the disciplinary infraction. (*Id.*)

On or about June 29, 2009, Plaintiff underwent total hip replacement surgery. (*Id.*)  After this surgery, Plaintiff returned to SCF and was placed in "Seg," which the court assumes refers to administrative segregation. (*Id.*)  Plaintiff maintains that he should not have been placed in administrative segregation, but instead should have been placed in the infirmary, ostensibly because Plaintiff "continued to experience intense and relentless pain and complication [sic] from the surgery." (*Id.*)

Plaintiff filed a grievance on December 16, 2009, complaining of severe pain in his left hip and lower back. (*Id.*)  Plaintiff requested that he be provided adequate medical care to relieve the pain and to see a specialist. (*Id.*)  This grievance was denied. (*Id.*)

Beginning approximately six months later, Plaintiff filed a number of additional grievances.  First, on June 25, 2010, Plaintiff filed a grievance against Defendants Stock and Dowis, a Physician's Assistant and "Medical Administrator" at SCF, respectively (*id.* at 2), for allegedly ignoring the severe pain in Plaintiff's lower hip and lower back. (*id.* at 4).  On September 13, 2010, Plaintiff filed a grievance against Defendant Stock for again allegedly ignoring his severe pain and for forcing him to take Elavil, purportedly a psychotropic drug, against his will. (*Id.*)  On October 19, 2010, Plaintiff filed a grievance against Defendant Stock for telling Plaintiff that he "will take elavil [sic] or nothing at all." (*Id.*)

3

On August 22, 2010, Plaintiff filed a grievance against Defendant Stock for "exceeding the scopes [sic] of her license" by injecting him with cortisone in her office.  (*Id.*)  Specifically, Plaintiff maintains that Defendant Stock is not "board certified in Ortho [sic]," that "her office is not a sanitized environment," and that the cortisone shot caused Plaintiff greater pain than he had before this injection.  (*Id.*)  On November 3, 2010, Plaintiff filed a grievance against Defendants Dowis and Stock inquiring as to "why 'Elavil' is the only drug this facility is allowed to use for pain control" and why the pharmacy refuses to "renew pain for me."  (*Id.*)

Plaintiff filed a number of additional grievances on unspecified dates.  Specifically, Plaintiff filed a grievance against Defendant Milyard to allegedly make him aware of Defendant Stock's "threats," retaliatory conduct, and forcing Plaintiff to take pyschotropic drugs, presumably the Elavil, against his will.  (*Id.*)  Plaintiff filed another grievance against Defendant Stock, to which he attached a copy of "the CDOC order to no longer use T-3s for pain control," requesting adequate pain relief, no additional contact with Defendant Stock, and the removal of "all medical restrictions taken by Stock as a form of retaliation."  (*Id.*)  Finally, Plaintiff also wrote numerous letters to Defendants Dowis and Milyard complaining about the allegedly inadequacy of the CDOC's maintenance of inmates' medical records and grievances.  (*Id.* at 4-5.)

## PROCEDURAL HISTORY

Plaintiff filed his Complaint on August 5, 2011.  (*See* Compl.)  Therein, pursuant to 42 U.S.C. § 1983, Plaintiff alleges a claim of deliberate indifference under the Eighth Amendment,

and two[2] claims that Defendants violated his due process rights under the Fourteenth

Amendment.

On December 14, 2011, Plaintiff filed his Motion to File a Supplemental Complaint, in

which he seeks to assert additional claims against Julie Fuller, a nurse at SCF.  (Mot. Supp.

Compl.)  Defendants filed their "Response to Plaintiff's Motion to File Supplemental

Complaint" on January 4, 2012.  (Doc. No. 28 [Resp. Mot. Suppl. Compl.].)  Pursuant to

D.C.COLO.LCivR 7.1C and Fed. R. Civ. P. 6(d), Plaintiff had until January 21, 2012 to file a

Reply.  No reply was filed on, or anytime after, that date.

Defendants filed their Motion to Dismiss on January 6, 2012.  (*See* Mot. Dismiss.)

Pursuant to Local Rule 7.1C and Federal Rule 6(d), Plaintiff had until February 2, 2012 to file a

Response.  No Response was filed on, or at anytime after, that date.

Plaintiff filed his First Motion for Summary Judgment on January 13, 2012.  (*See* First

Mot. Summ. J.)  In lieu of responding in kind to Plaintiff's Motion, Defendants filed their

Motion to Strike Plaintiff's First Motion for Summary Judgment on February 3, 2012.  (*See* First

Mot. Strike.)  Pursuant to Local Rule and Federal Rule 6(d), Plaintiff had until March 1, 2012 to

file a Response to Defendants' First Motion to Strike.  No Response was filed on, or at anytime

after, that date.

---

[2] On its face, Plaintiff's Complaint only features a single claim that he was denied due process under the Fourteenth Amendment.  (*Id.* at 7.)  However, for reasons to be discussed *infra* the court construes Plaintiff's Complaint to include an additional claim that his Fourteenth Amendment due process rights were violated.

Plaintiff filed his Second Motion for Summary Judgment on February 29, 2012.  (*See* Second Mot. Summ. J.)  Again, rather than responding in kind to Plaintiff's Second Motion, Defendants filed a Motion to Strike Plaintiff's Second Motion for Summary Judgment on March 20, 2012.  (*See* Second Mot. Strike.)  Although the time for Plaintiff to respond to Defendants' Second Motion to Strike has not yet passed, the court notes that it may rule on a motion at any time after it is filed.  D.C.COLO.LCivR 7.1C.

Finally, Plaintiff filed his "Motion to Justify Summary Judgment" on March 27, 2012, which the court construes to be an additional Motion for Summary Judgment.  (*See* Third Mot. Summ. J.)  Again, although the time for Defendants to respond to Plaintiff's Motion has not yet passed, the court may rule on it at any time after it was filed.  D.C.COLO.LCivR 7.1C

## LEGAL STANDARDS

### A.    **Pro Se** *Plaintiff*

Plaintiff is proceeding *pro se*.  The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers").  However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991) (citations omitted).  A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged.  *Associated*

6

*Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983); *see also Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (a court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").

### B. *Dismissal for Lack of Subject Matter Jurisdiction*

Rule 12(b)(1) empowers a court to dismiss a complaint for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case. Rather, it calls for a determination that the court lacks authority to adjudicate the matter, attacking the existence of jurisdiction rather than the allegations of the complaint. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). A court lacking jurisdiction "must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *See Basso*, 495 F.2d at 909. The dismissal is without prejudice. *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006); *see also Frederiksen v. City of Lockport*, 384 F.3d 437, 438 (7th Cir. 2004) (noting that dismissals for lack of jurisdiction should be without prejudice because a dismissal with prejudice is a disposition on the merits which a court lacking jurisdiction may not render).

A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971).  When considering a Rule 12(b)(1) motion, however, the Court may consider matters outside the pleadings without transforming the motion into one for summary judgment. *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). Where a party challenges the facts upon which subject matter jurisdiction depends, a district court may not presume the truthfulness of the complaint's "factual allegations . . . [and] has wide discretion to allow affidavits, other documents, and [may even hold] a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Id*.

### C.      *Failure to State a Claim Upon Which Relief Can Be Granted*

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6) (2007).  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1198 (10th Cir. 1991).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  The *Iqbal* evaluation requires two prongs of analysis.  First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory.  *Id.* at 1949–51.  Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief."  *Id.* at 1951.  If the allegations state a plausible claim for relief, such claim survives the motion to dismiss.  *Id.* at 1950.

Notwithstanding, the court need not accept conclusory allegations without supporting factual averments.  *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998).  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 129 S. Ct. at 1940.  Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* at 1949 (citation omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Iqbal*, 129 S. Ct. at 1949 (citation omitted).

### D.        *Qualified Immunity*

The doctrine of qualified immunity shields government officials from individual liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Qualified immunity is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Saucier v. Katz*, 533 U.S. 194, 121 (2001).

Although qualified immunity is most often raised at the summary judgment stage, the Tenth Circuit has recognized the propriety of raising a qualified immunity defense in a motion to dismiss.  *See Pueblo Neighborhood Health Ctr., Inc. v. Losavio*, 847 F.2d 642, 645–46 (10th Cir. 1988).  Once the defense is asserted, the burden shifts to the plaintiff to establish 1) that the defendant's actions violated a federal constitutional or statutory right and 2) that the federal right was clearly established at the time of the challenged conduct.  *PJ ex rel. Jensen v. Wagner*, 603 F.3d 1182, 1196 (10th Cir. 2010); *see also Losavio*, 847 F.2d at 646. While the plaintiff bears this burden, at the motion to dismiss stage, well-pleaded factual allegations are taken as true, although the court must consider whether they plausibly give rise to a claim for relief.  *Weise v. Casper*, 593 F.3d 1163,1166 (10th Cir. 2010).  The plaintiff first must establish that his allegations, taken in the light most favorable to plaintiff, show that the officer's conduct violated a constitutional right.  *Saucier*, 533 U.S. at 201.  If the plaintiff establishes a violation of a constitutional or statutory right, "the next, sequential step is to ask whether the right was clearly established."  *Id.*  This determination must be made "in light of the specific context of the case,

10

not as a broad general proposition." *Id.* "[T]he relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202. If the plaintiff fails to satisfy either part of this "heavy two-part burden," the court must grant the defendant qualified immunity and dismiss the deficient claims.

The United States Supreme Court has altered somewhat the analytical process outlined in *Saucier*, holding that the sequence of the analysis is no longer mandatory. *Pearson v. Callahan*, 555 U.S. 223 (2009). The judges of the district courts and the courts of appeals are now permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand. *Id.* at 236. The Supreme Court noted, however, that the sequence set forth in *Saucier* often is the appropriate analytical sequence. *Id.*

### E.      *Leave to File a Supplemental Pleading*

Rule 15(d) provides that "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). A Rule 15(d) motion is "addressed to the sound discretion of the court, and leave to serve a supplemental pleading 'should be liberally granted unless good reason exists for denying leave.'" *Southwest Nurseries, LLC v. Florists Mutual Insurance, Inc.,* 266 F. Supp. 2d 1253, 1256 (D. Colo. 2003) (quoting *Walker v. United Parcel Serv., Inc.,* 240 F.3d 1268, 1278 (10th Cir. 2001)). "The court should apply the same standard for exercising its discretion under Rule

15(d) as it does for deciding a motion under Rule 15(a)[2]." *Id.* (citing *First Savings Bank v. U.S. Bancorp,* 184 F.R.D. 363, 368 (D. Kan. 1998)).

Under Rule 15(a)(2), a court should allow a party to amend its pleadings "when justice so requires." Fed. R. Civ. P. 15(a)(2). The grant or denial of an opportunity to amend is within the discretion of the court, but "outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." *Foman v. Davis*, 371 U.S. 178, 182 (1962). "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Frank v. U.S. West*, *Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993).

## ANALYSIS

The court first considers Defendants' Motion to Dismiss. Based on its conclusion that Defendants' Motion to Dismiss is properly granted, the court finds that Plaintiff's Motions for Summary Judgment are properly denied, and that Defendants' Motions to Strike Plaintiff's Motions for Summary Judgment are properly denied as moot. Thereafter, the court will turn to Plaintiffs' Motion to File a Supplemental Complaint.

## I.   *DEFENDANTS' MOTION TO DISMISS*

In their Motion to Dismiss, Defendants seek to dismiss Plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). (*See* Mot. Dismiss.) Specifically, Defendants argue that (1) Plaintiff's claims against Defendants in their official capacities are barred by Eleventh

Amendment immunity, (2) to the extent Plaintiff is suing Defendants Milyard and Dowis in their individual capacities, Plaintiff fails to allege that Defendants Milyard and Dowis personally participated in the alleged violations of Plaintiff's constitutional rights, (3) Plaintiff's Eighth Amendment and retaliation claims fails to state a claim for relief, and (4) Defendants are entitled to qualified immunity from Plaintiff's claims.  (*See id.*)

### A.    *Eleventh Amendment Immunity*

Plaintiff is suing Defendants in their both their individual and official capacities. (Compl. at 1.)  Defendants argue that Plaintiff's official capacity claims for damages are barred by the Eleventh Amendment.  (Mot. Dismiss at 3-4.)

The Eleventh Amendment to the United States Constitution states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U .S. Const. amend. XI.  It has been interpreted to bar a suit by a citizen against the citizen's own state in federal court.  *Johns v. Stewart*, 57 F.3d 1544, 1552 (10th Cir. 1995).  Suits against state officials in their official capacity should be treated as suits against the state.  *Hafer v. Melo*, 502 U.S. 21, 25 (1991).  This is because a suit against a state official in his or her official capacity is a suit against the official's office and therefore is no different from a suit against the state itself.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). The Eleventh Amendment thus shields state officials, acting in their official capacities, from claims for monetary relief.  *See Hill v. Kemp*, 478 F.3d 1236, 1255–56 (10th Cir.2007); *see also Hunt v. Bennett*, 17 F.3d 1263, 1267 (10th Cir. 1994).

Here it is undisputed that Defendants are current and former employees of the CDOC, a state agency.  (Mot. Dismiss at 3; Compl. at 2.)  By suing Defendants in their official capacities, Plaintiff is effectively suing the State of Colorado for damages; thus these official capacity claims are barred under the Eleventh Amendment.

Eleventh Amendment immunity does not apply, however, to the extent that a plaintiff seeks prospective declaratory or injunctive relief pursuant to *Ex Parte Young,* 209 U.S. 123 (1908).  *See Hill v. Kemp*, 478 F.3d 1236, 1255–56 (10th Cir. 2007) (under *Ex Parte Young*, "the Eleventh Amendment generally will not operate to bar suits so long as they (i) seek only declaratory and injunctive relief rather than monetary damages for alleged violations of federal law, and (ii) are aimed against state officers acting in their official capacities, rather than against the State itself."); *Roe No. 2 v. Ogden*, 253 F.3d 1225, 1233 (10th Cir. 2001).  To determine whether the *Ex Parte Young* doctrine applies, "a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective."  *Verison Md. Inc. v. Pub. Serv. Comm'n of Md.,* 535 U.S. 635, 645 (2002) (internal quotation marks and citation omitted).  Additionally, the *Ex Parte Young* doctrine "may not be used to obtain a declaration that a state officer has violated a plaintiff's federal rights in the past."  *Buchwald v. Univ. of N.M. School of Med.,* 159 F.3d 487, 494 (10th Cir. 1998).

Here, Plaintiff "prays that the court . . . declare that the acts and omissions described herein violated Plaintiff' [sic] rights under the Constitution and laws of the United States." (Compl. at 9.)  Such relief is beyond the scope of the *Ex Parte Young* exception, and is therefore

14

barred, because it would amount to a declaration that Defendants violated Plaintiff's rights in the past. *Buchwald,* 159 F.3d at 484. Plaintiff also seeks injunctive relief "to move plaintiff to a facility where he will no longer experience the retaliatory conduct." (Compl. at 9.) However, as is outlined *supra,* Plaintiff's Complaint fails to allege that Defendants Milyard and Dowis personally participated in any violation of Plaintiff's constitutional rights, and fails to state a retaliation claim against Defendant Stock. Therefore, this claim for injunctive relief is barred because Plaintiff fails to allege an ongoing violation of federal law that might justify the injunctive relief he seeks. *See Verison Md. Inc.,* 535 U.S. at 645.

Accordingly, the court finds that Plaintiff's claims against Defendants in their official capacity for damages, as well for declaratory and injunctive relief, are barred by the Eleventh Amendment. Consequently, the court finds that Plaintiff's official capacity claims against Defendants are properly dismissed.

### B. *Personal Participation of Defendants Milyard and Dowis*

Defendants argue that Plaintiff fails to allege that Defendants Milyard and Dowis personally participated in the alleged violations of his constitutional rights. (Mot. Dismiss at 4-7.) More specifically, they argue that Defendants Milyard and Dowis only received grievances from Plaintiff regarding his treatment, and that this is insufficient to allege that they personally participated in any alleged violation of Plaintiff's constitutional rights. (*Id.* at 5-6.) For the same reason, Defendants maintain that they are entitled to qualified immunity. (*See id.* at 14-15.)

"Personal participation is an essential allegation in a § 1983 claim." *Bennett v. Passic,* 545 F.2d 1260, 1262-63 (10th Cir. 1976). Generally, "§ 1983 does not recognize a concept of

strict supervisor liability; the defendant's role must be more than one of abstract authority over individuals who actually committed a constitutional violation." *Fogarty v. Gallegos,* 523 F.3d 1147, 1162 (10th Cir. 2008) (citing *Jenkins v. Wood,* 81 F.3d 988, 994-95 (10th Cir. 1996)). Rather, an "'affirmative link' [must] exist[] between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise." *Butler v. City of Norman,* 992 F.2d 1053, 1055 (10th Cir. 1993)).

Plaintiff alleges that he filed a grievance against Defendant Milyard "making him aware of [Defendant] Stock's threats, retaliatory conduct, and forcing plaintiff to take psychotropic drugs against his will." (Compl. at 4.)  Plaintiff also alleges that Defendant Milyard "directly participated in this act of retaliation." (*Id.* at 5.)  As to Defendant Dowis, Plaintiff alleges that he filed a grievance against Defendant Dowis for ignoring the severe pain in his left hip and lower back. (*Id.* at 4.)  Finally, Plaintiff also alleges that he wrote numerous letters to both Defendants Milyard Dowis complaining of the adequacy of the CDOC's system for maintaining and analyzing inmates' grievances and medical records. (*Id.* at 4-5.)

The court finds that these allegations fails to establish that Defendants Milyard and Dowis personally participated in the alleged violations of Plaintiff's constitutional rights.  First, the fact that Plaintiff filed a grievance against Defendant Milyard making him aware of Defendant Stock's conduct fails to establish the requisite personal participation. *See Larson v. Meek,* 240 F. App'x 777, 780 (10th Cir. 2007) (A defendants "denial of [] grievances alone is insufficient to establish personal participation in [] alleged constitutional violations.") (citation omitted); *Gallagher v. Shelton,* 587 F.3d 1063, 1069 (10th Cir. 2009) (holding that mere

participation in the grievance process, without any connection to the violation of constitutional rights, generally is insufficient to establish personal participation).  Plaintiff's allegation that Defendant Milyard participated in some unspecified "act of retaliation" is too conclusory to establish that Defendant Milyard personally participated in any alleged violations of Plaintiff's federal rights.  *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d at 1262 (the court need not accept conclusory allegations without supporting factual averments).

Similarly, without some allegations that she was directly involved in Plaintiff's medical care, the mere fact that Defendant Dowis allegedly ignored Plaintiff's complaints of severe hip and lower back pain is insufficient to establish personal participation.  *See Garcia v. Chamjock,* 11-cv-00263-PAB-MEH, 2012 WL 638145, at *4 (D. Colo. Feb. 27, 2012) (citing *Dodds v. Richardson,* 614 F.3d 1185, 1199 (10th Cir. 2010)) (holding that where a defendant is not personally involved in the plaintiff's medical care, she cannot be held liable under § 1983 unless she promulgated, created, implemented, or was responsible for a policy that caused the alleged constitutional harm, and also acted with the state of mind required to establish that constitutional deprivation.)

Finally, although it is unclear how the alleged deficiencies in the CDOC's procedures for addressing inmate grievances and maintaining inmate medical records contributed to the violation of Plaintiff's constitutional rights, these allegations are likewise insufficient to establish that Defendants Dowis and Milyard personally participated in the alleged violations of Plaintiff's constitutional rights.  Receiving correspondence from an inmate does not demonstrate the

personal participation required to trigger liability under § 1983.  *Davis v. Ark. Valley Corr.*

*Facility,* 99 F. App'x 838, 843 (10th Cir. 2004).

Altogether, it is inconsistent with "the personal responsibility requirement for . . . a

section 1983 action" to hold "any well informed [prison official] personally liable for damages

flowing from any constitutional violation occurring . . . within that [official's] jurisdiction."

*Crowder v. Lash,* 687 F.2d 996, 1006 (7th Cir. 1982); *Walker v. Meyer,* 08-cv-01911-REB-

KLM, 2009 WL 961490, at *4 (D. Colo. Apr. 7, 2009).  Accordingly, the court finds that

Plaintiff's claims against Defendants Milyard and Dowis in their individual capacity are properly

dismissed.  Furthermore, because Plaintiff has not sufficiently alleged that Defendants Milyard

and Dowis violated his constitutional rights, the court finds that they are entitled to qualified

immunity.

        **C.**      ***Eighth Amendment Claim Against Defendant Stock***

Defendants maintain that Plaintiff's Eighth Amendment claim fails to state a claim for

relief.  (Mot. Dismiss at 7-10.)  Specifically, they maintain that Plaintiff's allegations that

Defendant Stock denied him adequate pain medication to manage his pain amount to his mere

difference of opinion over the need for, or the adequacy of, medical treatment.  (*Id.*)

A plaintiff states a cognizable Eighth Amendment claim for denial of medical attention if

he "allege[s] acts or omissions sufficiently harmful to evidence deliberate indifference to serious

medical needs."  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  The Tenth Circuit has recognized

that officials' delay in providing medical care, which resulted in "continued and unnecessary

pain," may amount to  deliberate indifference.  *Ramos v. Lamm*, 639 F.2d 559, 576 (10th Cir. 1980).

A "deliberate indifference" claim involves both an objective and a subjective component. *Sealock v. Colorado*, 218 F.3d1205, 1209 (10th Cir. 2000).  To satisfy the objective prong, a prisoner must demonstrate that his medical need is "objectively, sufficiently serious."  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citation and quotation marks omitted).  A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (citation omitted).

To satisfy the subjective component, a prisoner must demonstrate that prison officials acted with a "sufficiently culpable state of mind."  *Farmer*, 511 U.S. at 834.  The officials must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety."  *Id.* at 837.  That is, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

In support of his Eighth Amendment claim, Plaintiff alleges that, after his total hip replacement surgery, Defendant Stock ignored the severe pain in his left hip and lower back; told Plaintiff that "he will take [E]lavil or nothing at all"; and failed to discuss the option of a possible corrective surgery, or that defective parts could have been the cause of Plaintiff's severe pain.  (Compl. at 4, 6.)  Based on these allegations, Plaintiff alleges that Defendant stock delayed and denied him adequate medical care for "one and a half year[s]."  (*Id.* at 6.)

It is clear for the face of the Complaint, however, that Plaintiff's medical treatment was not delayed or denied. Indeed, Plaintiff concedes that he was given Elavil and a cortisone shot for his pain. (*Id.* at 4.) The court agrees with Defendants that Plaintiff simply appears to disagree with the treatment prescribed by Defendant Stock and "would have preferred to be prescribed a different medication for his pain management." (Mot. Dismiss at 9.) A prisoner does not have a valid claim for deliberate indifference simply because he was denied "a particular course of treatment." *Callahan v. Poppell,* 471 F.3d 1155, 1160 (10th Cir. 2006); *Perkins v. Kansas Dept. Corrections*, 165 F.3d 803, 811 (10th Cir. 1999) (a disagreement with medical personnel "does not give rise to a claim for deliberate indifference to serious medical needs"); *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993) ("a difference of opinion does not support a claim of cruel and unusual punishment"); *see also Estelle*, 429 U.S. at 107 (whether a certain form of treatment should be prescribed "is a classic example of a matter for medical judgment").

To the extent that Plaintiff maintains that Defendant Stock failed to discuss the option of a possible corrective surgery or that defective parts could have been the cause of Plaintiff's severe pain, his Complaint does not contain any allegations suggesting that Defendant Stock was aware of the fact that Plaintiff's hip was replaced with defective part or that corrective surgery could have reduced or eliminated his pain.[3] *Farmer,* 511 U.S. at 837. Indeed, even if Defendant

---

[3] Indeed, Plaintiff's own allegations suggest that Defendant Stock was not aware that Plaintiff's hip replacement was defective. More specifically, Plaintiff alleges that if his family had not contacted a law firm on December 15, 2010 and discovered that the cause of his severe pain was a defective hip joint, Defendants "would still be denying Plaintiff treatment." (Compl.

Stock was negligent by failing to appreciate that his hip replacement could be defective and that this defect could have caused his severe pain, this also fails to rise to the level of a deliberate indifference claim.  *Perkins,* 165 F.3d at 811. ("A negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation."); *see also Estelle,* 429 U.S. at 103 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.")

Accordingly, the court finds that Plaintiff fails to state a claim against Defendant Stock for a violation of his Eighth Amendment rights.  Additionally, because Plaintiff has failed to allege that Defendant Stock's actions violated his Eighth Amendment rights, the court finds that Defendant Stock is entitled to qualified immunity from this claim.  Altogether, the court finds that Plaintiff's Eighth Amendment claim against Defendant Stock is properly dismissed.

### D.      *Retaliation Claim Against Defendant Stock*[4]

Defendants argue that to the extent that Plaintiff's Complaint asserts a claim for retaliation, he fails to state a claim for relief.  (Mot. Dismiss at 10-12.)  Beyond his Eighth Amendment claim, Plaintiff's Complaint is far from a model of clarity.  However, because

---

at 7.)  Plaintiff's grievances that Defendant Stock denied him adequate medication all predate December 15, 2010, to the extent that he includes relevant dates at all.  (*See id.* at 4.)

[4] Although Plaintiff alleges that Defendant Milyard is "liable for the retaliatory conduct . . . because he was given notice of the violation, yet failed to remedy it" and because "he directly participated in this act of retaliation," the court has already concluded that Plaintiff fails to sufficiently allege that Defendant Milyard personally participated in any violation of Plaintiff's constitutional rights.  Accordingly, the court addresses Plaintiff's retaliation claim on its merits only as it relates to Defendant Stock.

Plaintiff's Complaint repeatedly alleges that he was retaliated against (*see* Compl. at 4-5), and because Defendants have addressed such a claim in their Motion to Dismiss, the court construes Plaintiff's Complaint to include a claim for retaliation against Defendant Stock for purposes of this Recommendation.

Nevertheless, the court finds that Plaintiff's retaliation claim fails to state a claim for relief. Prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his right of access to the courts. *Smith v. Maschner,* 899 F.2d 940, 947 (10th Cir. 1990). Access to the courts is a fundamental right protected by the Constitution, including the First Amendment right to petition the government for grievances. *Nordgren v. Milliken,* 762 F.2d 851, 853 (10th Cir. 1985). Because a prisoner must first file a grievance in order to ultimately gain access to courts to state a claim for relief, 42 U.S.C. § 1997e, punishing him for filing a grievance may state a claim for both denial of access to the courts and violation of the First Amendment. *See id*.; *Wildberger v. Bracknell*, 869 F.2d 1467, 1468 (11th Cir. 1989) (holding that retaliation for filing lawsuits and administrative grievances "violates both the inmate's right of access to the courts and the inmate's First Amendment rights").

However, a prisoner is "not inoculated from the normal conditions of confinement experienced by convicted felons serving time in prison merely because he has engaged in protected activity." *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998). That is, not "every response to a prisoner's exercise of a constitutional right gives rise to a retaliation claim." *Dawes v. Walker*, 239 F.3d 489, 492–93 (2d Cir. 2001), *overruled on other grounds by Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002). Instead, to state a claim for retaliation, a

plaintiff must allege "(1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." *Worrell v. Henry,* 219 F.3d 1197, 1212 (10th Cir. 2000) (internal quotation marks and citations omitted). "An inmate claiming retaliation must allege *specific facts* showing retaliation because of the exercise of the prisoner's constitutional rights." *Peterson*, 149 F.3d at 1144 (emphasis in original; internal quotation marks and citation omitted). "[A] plaintiff must prove that 'but for' the retaliatory motive, the incidents to which he refers, . . . would not have taken place." *Id.* (internal quotation marks and citation omitted.)

Here, Plaintiff only includes conclusory allegations that Defendant Stock retaliated against him. Indeed, upon review of the allegations in Plaintiff's Complaint, it is unclear what particular constitutionally protected activity Plaintiff was engaged in that precipitated Defendant Stock's alleged retaliation. (*See* Compl. at 4-5.) Moreover, even if the court gratuitously assumes that Defendant Stock's alleged retaliation was based on Plaintiff's filing of grievances against her (*id.* at 3-4), Plaintiff's Complaint does not include specific facts as to what actions, if any, Defendant Stock took to retaliate against Defendant for filing these grievances (*see id.*). Consequently, it is impossible for the court to determine whether Defendant Stock's actions caused Plaintiff an "injury that would chill a person of ordinary firmness from continuing to engage in that activity," *Worrell*, 219 F.3d at 1212, or whether the "actual motivating factor

behind [Defendant Stock's] actions" was to retaliate against Plaintiff for filing grievances, *Smith*, 899 F.2d at 950-51 (citation omitted).

Accordingly, to the extent that Plaintiff's Complaint alleges a claim for retaliation pursuant to 42 U.S.C. § 1983, the court finds that Plaintiff fails to state a claim for relief.  As a consequence, the court also finds that Defendant Stock is entitled to qualified immunity from this claim.  Therefore, the court finds that Plaintiff's retaliation claim is properly dismissed.

### E.   *Due Process Claims*

Defendants argue that, to the extent that Plaintiff's Complaint can be read to include a due process claim based on his disciplinary conviction for failing to work, that claim is barred by the applicable statute of limitations.  (Mot. Dismiss at 12-14.)  However, while Plaintiff's Complaint includes a claim alleging that he was denied due process under the Fourteenth Amendment, the court finds that this claim is not tied whatsoever to his disciplinary conviction on or around April 6, 2009.  (*See* Compl. at 7.)  More specifically, although Plaintiff does include factual allegations relating to his April 2009 disciplinary conviction (*id.* at 3), Plaintiff's due process claim does not argue that his due process rights were violated by his disciplinary conviction (*see id* at 7.).  If Plaintiff indeed intended to state a due process claim based on his disciplinary conviction, it is Plaintiff's responsibility to affirmative state such a claim in his Complaint.  *See Nasious v. Two Unknown B.I.C.E. Agents,* 492 F.3d 1158, 1163 (10th Cir. 2007) ("[T]o state a claim for relief in federal court, a complaint must explain what each defendant did to him or her; when the defendant did it; how the defendant's action harmed him or her; and, what specific legal right the plaintiff believes the defendant violated.")  Accordingly, because

24

Plaintiff has not alleged a due process claim based on his disciplinary conviction, the court does not address Defendants' argument that such a claim would be time-barred.

Turning next to the actual text of Plaintiff's due process claim (Compl. at 7), the court finds that this claim fails to state a claim for relief.  Plaintiff's due process claim primarily recites legal authority and then digresses into a discussion about how Defendants would still be denying him treatment if his family had not contacted a law firm and discovered that "the cause of the severe pain that [Plaintiff] was experiencing was due to a defective hip joint."  (*Id.*)  However, even if true, these facts do not suggest that he was somehow denied due process of law.  Accordingly, the court finds that Plaintiff's due process claim fails to state a claim for relief.

However, liberally construing Plaintiff's Complaint, the court finds that Plaintiff asserts another claim that his due process rights under the Fourteenth Amendment were violated.  More specifically, at page six of his Complaint, Plaintiff maintains that it is "well established that an individual has a liberty interest in avoiding the unwanted administration of antipyschotic drugs" and that "[f]orcible administration of antipyschotic medication . . . violate[s] the Due Process Clause of the Fourteenth Amendment."  (*Id.* at 6.)  Earlier in his Complaint, Plaintiff alleges that Defendant Stock "forc[ed] him to take "Elavil" (psychotropic drug) against his will."[5]  (*Id.* at 4.)

---

[5] To clarify, Plaintiff's allegations do not suggest that he was literally forced to take Elavil.  Instead, although Plaintiff alleges in a conclusory fashion that Defendant Stock "forc[ed] plaintiff to take psychotropic drugs against his will" (Compl. at 4), his factual allegations indicate that Defendant stock instead told Plaintiff that "he will take elavil *or nothing at all*" (*id.* at 4, 6) (emphasis added).

Defendants have not addressed this claim in their Motion to Dismiss.  Nevertheless, because Plaintiff is proceeding *in forma pauperis,* the court has authority to dismiss this claim if it finds that it fails to state a claim for relief.  28 U.S.C. § 1915(e)(2)(B)(ii) (providing that for complaints filed *in forma paperis*, "the court shall dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted.")  Upon review of this claim, however, the court finds that this due process claim may well state a claim for relief.

"[A]n individual has a constitutionally protected liberty interest in avoiding involuntary administration of antipsychotic drugs"; indeed, this interest can only be overcome by "an essential or overriding state interest."  *United States v. Gallaway,* 422 F. App'x 676, 679 (10th Cir. 2011) (citing *Seel v. United States,* 539 U.S. 166, 178-79 (2003)).  In *Bundy v. Stommel,* 168 F. App'x 870 (10th Cir. 2006), the Tenth Circuit considered whether the district court erred in dismissing as legally frivolous an inmate's claim that he had a liberty interest in avoiding a requirement that he take pyschotropic medication to be eligible for parole.  In *Bundy,* as part of his participation in a program required to be considered for parole, the plaintiff was required to sign a contract to take recommended pyschotropic medication.  *Id.* at 871.  The district court dismissed the plaintiff's claims on different grounds as legally frivolous.  *Id.* at 871-72.  The Tenth Circuit reversed.

The *Bundy* court acknowledged that the facts before it "differ[ed] on a significant point" from *Washington v. Harper,* 494 U.S. 210 (1990), in which the Supreme Court "recognized a 'significant liberty interest in avoiding the unwanted administration of antipsychotic drugs under

the Due Process Clause of the Fourteenth Amendment.'" *Bundy,* 168 F. App'x at 872 (quoting

*Harper,* 494 U.S. at 221-22).   More specifically, the court acknowledged that in *Harper*

antipsychotic drugs were "forced on the defendant," whereas, in *Bundy,* the plaintiff "was given

an ostensible choice between the drugs and eligibility for parole." *Id.* at 873.   However, after

reviewing two cases from other circuits, *Felce v. Fiedler,* 974 F.2d 1484 (7th Cir. 1992) and

*United States v. Williams,* 365 F.3d 1045 (9th Cir. 2004), where those courts held, respectively,

that conditioning a defendant's mandatory parole and a defendant's three-year sentence to

supervised release on taking psychotropic drugs implicated those defendants' constitutionally

protected liberty interests, the Tenth Circuit held that the *Bundy* plaintiff's argument that

conditioning his eligibility for parole on taking pyschotropic drugs was not legally frivolous.

*Bundy,* 168 F. App'x at 873.

  The facts presented here are certainly different from those considered by the Tenth

Circuit in *Bundy.*   However, *Bundy* makes clear that the mere fact that a plaintiff may have an

"ostensible choice" not to take pyschotropic drugs, despite the adverse consequences associated

with that decision, is not dispositive of whether an individual has a constitutionally protected

liberty interest.   And, here, at least according to the allegations in Plaintiff's Complaint, Plaintiff

faced a Hobson's choice somewhat similar to that presented in *Bundy.*   Plaintiff was forced to

either take Elavil, which he alleges is a psychotropic drug, or "take nothing at all" and thus cope

unmedicated with his alleged severe pain.   Indeed, it is arguable that these circumstances are

more likely to raise constitutional concerns than those in *Bundy* as, presumably, other non-

psychotropic pain medications were available to alleviate Plaintiff's pain.   This and other

questions will likely be addressed as the record in this case is developed and Fed. R. Civ. P. 56 summary judgment motions are file.  However, in light of *Bundy,* the court is unable to conclude that this due process claim fails to state a claim for relief.

To summarize, with respect to Defendants' Motion to Dismiss (Doc No. 29), the court finds that Plaintiff's claims against Defendants Milyard, Dowis and Stock in their official capacities are barred by Eleventh Amendment immunity.  The court further finds that Plaintiff's individual capacity claims against Defendants Milyard and Dowis fail because Plaintiff has not alleged that Defendants Milyard and Dowis personally participated in the alleged violations of his constitutional rights.  Additionally, the court finds that Plaintiff's Eighth Amendment deliberate indifference claim, retaliation claim, and the due process claim contained on page seven of Plaintiff's Complaint fail to state a claim for relief.  Because these are the only arguments raised in Defendants' Motion to Dismiss, the court finds that Defendants' Motion to Dismiss is properly granted.

However, Defendants have not argued that the due process claim on page six of Plaintiff's Complaint should be dismissed, and the court has concluded that the claim is sufficient to withstand a Rule 12(b)(6) challenge.  Accordingly, the court finds that this due process claim should not be dismissed.

## II.     PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT AND DEFENDANTS' MOTION TO STRIKE

Plaintiff's three Motions for Summary Judgment relate entirely to his claim for deliberate indifference under the Eighth Amendment.  (*See* First Mot. Summ J., Second Mot. Summ. J.

Third Mot. Summ. J.)  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Redmon v. United States*, 934 F.2d 1151, 1155 (10th Cir.1991).  By concluding *infra* that Plaintiff's Eighth Amendment claim fails to state a claim for relief, the court has essentially concluded that Plaintiff is not entitled to "judgment as a matter of law" as to this claim.  Fed. R. Civ. P. 56(a); *see also Allen v. United Props. and Constr., Inc.,* 07-cv-00214-LTB-CBS, 2008 WL 40800035, at *17 (D. Colo. Sept. 3, 2008.)  Accordingly, the court finds that Plaintiff's Motions for Summary Judgment are properly denied.  Relatedly, the court finds that Defendants' Motions to Strike Plaintiff's Motions for Summary Judgment are also properly denied as moot.

### III.   MOTION TO FILE A SUPPLEMENTAL COMPLAINT

In his Supplemental Complaint, Plaintiff seeks to assert a claim that Julie Fuller, a nurse at SCF, violated Plaintiff's rights under the First Amendment and the Eighth Amendment.[6] (Doc. No. 22 [Supp. Compl.].)  In support of his First Amendment retaliation claim, Plaintiff

---

[6] Plaintiff also alleges that Nurse Fuller violated his due process rights under the Fourteenth Amendment.  (Supp. Compl. at 2.)  However, it appears that his only basis for that claim is that Defendant Fuller "stated what medications the plaintiff may or may not need for his pain issue" and that this "shows that she is practising [sic] medicine."  (*Id.*)  Plaintiff maintains that a state statute provides that "the practice of medicine by any person without [a certificate from the State Board of Health]" constitutes "a misdemeanor punishable by fine or imprisonment."  (*Id.* (citing Colo. Rev. Stat. § 12-36-118.)  Plaintiff further maintains that this statute is "not unconstitutional and void under the Fourteenth Amendment, which declares that no state shall deprive any person of life, liberty, or property without due process."  (*Id.*)  The mere fact that the Colorado statute that Plaintiff cites in his Supplemental Complaint may be consistent with the Fourteenth Amendment's Due Process Clause does not convert Plaintiff's claim that Nurse Fuller violated that statute into a due process claim.

alleges that, in a September 29, 2011 entry in Plaintiff's medical records, Nurse Fuller labeled

Plaintiff a "drug seeker" by stating that "you don't need it anyway, and I'm going to pull your

chart and have you taken off." (*Id.* at 1-2.) Plaintiff appears to allege that Nurse Fuller only

made these entries because she "threatened" Plaintiff during a confrontation over pain

medication. (*Id.* at 1.) In support of his Eighth Amendment deliberate indifference claim,

Plaintiff appears to maintain that by "stat[ing] what medications the plaintiff may or may not

need for his pain," Nurse Fuller subjected him to unreasonable pain and suffering. (*Id.* at 2.)

Defendant argues that the court should deny Plaintiff's Motion to File a Supplemental

Complaint for three reasons. First, Defendants maintain that when seeking leave to supplement

his Complaint, Plaintiff was required to "attach the proposed amended complaint to the motion"

and that his "proposed amended complaint must stand alone; it must contain all of the plaintiff's

claims." (Resp. Mot. Supp. Compl. at 2.)

Defendants are correct that when a plaintiff seeks to *amend* his complaint, he must attach

the proposed amended complaint to his motion, featuring all of his claims against all defendants.

In other words, a plaintiff may not seek to amend his complaint in a piecemeal fashion by merely

featuring additional allegations or claims in the motion itself, or by attaching to his motion only

the proposed amendments without the allegations and claims of the original pleading that are to

remain unchanged.

However, it is less clear that a plaintiff may not file a *supplemental complaint* that stands

alone from the original pleading. Indeed, Rule 15(d) provides that "the court may, on just terms,

permit a party to file a *supplemental pleading* setting out any transaction, occurrence, or event

that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d) (emphasis added). Thus, the rule appears to contemplate that a supplemental pleading may be separate and apart from the original complaint and need not contain all of the claims and factual allegations against all of the defendants in the case. Rather, it may include only those claims and allegations relating to the transaction, occurrence, or event that happened after the date of the original pleading. *See id.*

To be sure, Plaintiff has further combined his Supplemental Complaint and his Motion to File a Supplemental Complaint into one document. However, in light of the fact that Plaintiff is proceeding *pro se,* which requires that the court construe his filings liberally, the court finds that this technical defect should not be fatal to his Motion.

Second, Defendants argue that Plaintiff's Motion to File A Supplemental Complaint should be denied because Plaintiff's claims against Nurse Fuller "appear to have no relation to Plaintiff's original claims made in his Complaint." (Resp. Mot. Supp. Compl. at 2.) The court agrees that it would be warranted to deny Plaintiff's Motion to File a Supplemental Complaint if the claims featured in his Supplemental Complaint bore no relationship to the claims asserted in his original Complaint. *See Macdonald v. Miller,* No. CIV-08-567-M, 2009 WL 1163388, at *7 (W.D. Okla. Apr. 29, 2009) (citing *Smith v. Kirby,* 53 F. App'x 14, 16 (10th Cir. 2002)) (finding that the claims set forth in the Plaintiff's motion to supplement bore "no relationship to the claims in the original complaint and involve different parties, different circumstances, and a different prison.")

Nevertheless, the court finds that Plaintiff's proposed claims against Nurse Fuller do bear some relationship to the claims asserted in his original Complaint.  Although Nurse Fuller would be a new defendant if Plaintiff's Motion were granted, the claims are quite similar to those asserted in his original Complaint.  More specifically, much like the claims asserted against Defendant Stock in his original Complaint, Plaintiff alleges that Nurse Fuller retaliated against him and denied him appropriate medication for the pain resulting from his hip replacement surgery.  Accordingly the court cannot conclude that Plaintiff's proposed supplemental claims bear no relationship to the claims asserted in his original Complaint.

Finally, Defendants argue that Plaintiff was required to comply with the exhaustion requirements of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a) & 28 U.S.C. § 1915(b)(2).  Under the PLRA, exhaustion of claims is mandatory:  "No action shall be brought with respect to prison conditions under section 1983 . . . or any other federal law, by a prisoner confined in any . . . prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  The PLRA requires "proper exhaustion" of administrative remedies, which means that a plaintiff must utilize all administrative remedies provided and must comply with the deadlines and other procedural rules prior to filing a federal lawsuit.  *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).

The court assumes, without deciding, that Plaintiff must first exhaust his administrative remedies as to his additional claims contained in his proposed Supplemental Complaint.[7]  *See*

---

[7] Although it is not entirely clear, Defendants may be arguing that Rule 15(d) is not available to Plaintiff in this case whatsoever.  In their Response to Plaintiff's Motion to File a

*Price v. Caruso,* 2007 WL 2914232, at *1-2 (W.D. Mich. Oct. 3, 2007) (denying a motion to

supplement the complaint where the plaintiff did not properly exhaust the supplemental claims

that arose after the filing of his complaint); *see also Rhodes,* 621 F.3d at 1006-07. However, in

*Jones v. Bock*, 549 U.S. 199 (2007), "[t]he Supreme Court . . . set forth a new standard to govern

PLRA lawsuits: 'failure to exhaust is an affirmative defense under the PLRA, and . . . inmates

are not required to specially plead or demonstrate exhaustion in their complaints.'" *Roberts v.*

*Barreras*, 484 F.3d 1236, 1240 (10th Cir. 2007) (quoting *Jones,* 549 U.S. at 216 and citing

*Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223 (10th Cir. 2007)). Now "the burden of proof for

the exhaustion of administrative remedies in a suit governed by the PLRA lies with the

---

Supplemental Complaint, Defendant cite to *Williams v Adams,* No. 05-cv-00124–AWI-SMS PC, 2007 WL 1595457, at *1 (E.D. Cal. June 1, 2007). In *Williams,* the court concluded that the plaintiff-inmate could not avail himself of Rule 15(d) to add new claims that arose after the suit was filed because allowing the plaintiff to add new claims via a supplemental complaint "would allow plaintiff to thwart the mandate of section 1997e(a), which require that claim exhaustion occur *prior to filing suit* and not during the pendency of the suit." *Id.* (emphasis added). However, the court finds that *Williams* has been overruled on this point by *Rhodes v. Robinson,* 621 F.3d 1002, 1006-07 (9th Cir. 2010). In *Rhodes,* the Ninth Circuit declined to conclude that the PLRA's exhaustion requirements dictate that "a supplemental complaint alleging new, and newly exhausted, claims could never be filed in a PLRA action" because "Congress has never indicated . . . that it intended to do away with Rule 15(d) in PLRA actions," and the Supreme Court has otherwise advised that "'when Congress mean[s] to department from the usual procedural requirements, it do[es] so expressly.'" 621 F.3d at 1007 (citing *Jones v. Bock,* 549 U.S. 199, 216 (2007)). Thus the Ninth Circuit held that so long as the new claims contained therein are properly exhausted, a plaintiff may file a supplemental complaint pursuant to Rule 15(d).

While the court is not bound by *Rhodes,* or, for that matter, *Williams,* the court is persuaded by the *Rhodes* court's reasoning. Thus, to the extent that Defendants may be arguing that Plaintiff cannot avail himself of Rule 15(d) at all, the court disagrees, and finds that Plaintiff may seek to file a Supplemental Complaint under Rule 15(d) to pursue properly-exhausted claims that arose after he filed his original Complaint.

defendant." *Id.* at 1241.  Dismissal under § 1997e(a) for failure to exhaust administrative remedies therefore cannot usually be made on pleadings without proof.  *See Freeman v. Watkins*, 479 F.3d 1257, 1260 (10th Cir. 2007) ("'only in rare cases will a district court be able to conclude from the face of the complaint that a prisoner has not exhausted his administrative remedies and that he is without a valid excuse.'") (quoting *Aquilar-Avellaveda*, 478 F.3d at 1225).

Here, Defendants have not submitted any evidence suggesting that Plaintiff failed to exhaust his administrative remedies prior to seeking leave to file his Supplemental Complaint.  Rather they merely maintain that Plaintiff "should file a new complaint, which also necessitates complaince with the exhaustion . . . requirement of the [PLRA]."  (Resp. Mot. Supp. Compl. at 2.)  Without more, the court declines to deny Plaintiff's Motion to File a Supplemental Complaint on this ground.

Nevertheless, the court again notes that it has authority to deny Plaintiff's Motion to File a Supplemental Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) if his proposed supplemental claims fail to state a claim for relief.  *See Southwest Nurseries, LLC,* 266 F. Supp. 2d at 1256 ("The court should apply the same standard for exercising its discretion under Rule 15(d) as it does for deciding a motion under Rule 15(a)[2]."); *Gohier v. Enright,* 186 F.3d 1216 (10th Cir. 1999) (citations omitted) (Under Rule 15(a)(2), "[a] proposed amendment is futile if the complaint, as amended, would be subject to dismissal.  The futility question is functionally equivalent to the question whether a complaint may be dismissed for failure to state a claim . . .

.")  The court indeed finds that the claims included in Plaintiff's proposed Supplemental Complaint fail to state a claim for relief.

As to Plaintiff's proposed retaliation claim against Nurse Fuller, the applicable legal standard is outlined above. *See also Worrell,* 219 F.3d at 1212 (to state a claim for retaliation, a plaintiff must allege "(1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.")  Here, Plaintiff's retaliation claim fails on the first and third elements because he does not allege that he was engaged in any constitutionally protected activity. Rather, Plaintiff alleges that Nurse Fuller took him off some unspecified medications due to "a confrontation over pain medication."  (Supp. Compl. at 1-2.)  Accordingly, the court finds that Plaintiff's proposed retaliation claim against Nurse Fuller is futile insofar as it fails to state a claim for relief.

Plaintiff's proposed deliberate indifference claim also falls short of stating a plausible claim for relief under the applicable legal standard discussed *supra.*  Specifically, although Plaintiff alleges that Nurse Fuller took him off certain medications, he does not include any factual allegations as to what those medications were, or how by taking Plaintiff off those medications Nurse Fuller knew of and disregarded "an excessive risk" to Plaintiff's health or safety." *Farmer, Farmer*, 511 U.S. at 837.  Consequently, like with his proposed retaliation claim, the court finds that Plaintiff's proposed deliberate indifference claim is futile insofar as it

35

fails to state a claim for relief.  Accordingly, because both claims contained in Plaintiff's proposed Supplemental Complaint would be futile, the court finds that Plaintiff's Motion to File a Supplemental Complaint is properly denied.

WHEREFORE, for the foregoing reasons, the court respectfully

RECOMMENDS that Defendants' "Motion to Dismiss" (Doc. No. 29) be GRANTED and that (1) Plaintiff's official capacity claims against Defendants Milyard, Dowis, and Stock for damages, declaratory and injunctive relief; (2) Plaintiff's individual capacity claims against Defendants Milyard and Dowis; (3) Plaintiff's individual capacity claim against Defendant Stock for violations of his Eighth Amendment rights; and (4) Plaintiff's individual capacity claim against Defendant Stock for violations of his Fourteenth Amendment due process rights featured on page seven of his Complaint be dismissed.

The court further

RECOMMENDS that Plaintiff's claim for violations of his due process rights under the Fourteenth Amendment featured on page six of his Complaint, which was not addressed in Defendants' Motion to Dismiss, be sustained.

The court further

RECOMMENDS that Plaintiff's First "Motion for Summary Judgment" (Doc. No. 31), Plaintiff's Second "Motion for Summary Judgment" (Doc. No. 43), and Plaintiff's "Motion to Justify Summary Judgment" (Doc. No. 50) be DENIED, and that Defendants' "Motion to Strike Plaintiff's [First] Motion for Summary Judgment" (Doc. No. 35) and "Motion to Strike Plaintiff's [Second] Motion for Summary Judgment" (Doc. No. 48) be DENIED as moot.

Finally, the court further

RECOMMENDS that Plaintiff's Motion to File a Supplemental Complaint (Doc. No. 22) be DENIED.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate

review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 6th day of April, 2012.

BY THE COURT:

Kathleen M Tafoya
United States Magistrate Judge