IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 11-cv-02050-PAB-KMT

MICHAEL KEITH TIVIS,

    Plaintiff,

v.

MS. JOANN STOCK (Physician Assistant), in her official and individual capacities,
MR. KEVIN MILYARD (Warden), in his official and individual capacities, and
MS. BEVERLY DOWIS (Medical Administrator), in her official and individual capacities,

    Defendants.

---

**ORDER**

---

This matter is before the Court on the Recommendation of United States Magistrate Judge [Docket No. 56] filed on April 6, 2012.  The magistrate judge recommends that defendants' motion to dismiss [Docket No. 29] be granted, that plaintiff's motions for summary judgment [Docket Nos. 31, 43] and motion to justify summary judgment [Docket No. 50] be denied, and that defendants' motions to strike [Docket Nos. 35, 48] be denied as moot.  The Court granted plaintiff until May 24, 2012 to file objections to the Recommendation.  Plaintiff filed timely objections on April 27, 2012.  On May 1, 2012, plaintiff filed a motion requesting leave to supplement his objections [Docket No. 67], which the Court granted [Docket No. 69].  On May 25, 2012, plaintiff filed another motion to supplement his objections [Docket No. 72].  Although such objections would be untimely, the Court will consider the supplement and grant plaintiff's second motion to supplement.  Defendants filed a timely objection to that

aspect of the Recommendation that construed plaintiff's complaint as stating a viable due process claim relating to the involuntary administration of a psychotropic drug. The Court will "determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ P. 72(b)(3).[1]

At all relevant times, plaintiff was an inmate at the Sterling Correctional Facility ("Sterling") of the Colorado Department of Corrections ("CDOC"). On June 29, 2009, plaintiff underwent a total hip replacement. He alleges that the surgery was not successful because he received a defective artificial hip, resulting in persistent pain and a serious infection. Plaintiff contends that defendants postponed addressing his post-operative problems and failed to adequately treat his pain. The Recommendation construed plaintiff's complaint as containing an Eighth Amendment claim, a retaliation claim, and two claims for violation of his due process rights under the Fourteenth Amendment brought pursuant to 42 U.S.C. § 1983.[2]

The Recommendation correctly concluded that plaintiff's claims against defendants in their official capacities for money damages were barred by the Eleventh Amendment. *See Henderson v. Jones*, 378 F. App'x 808, 809 (10th Cir. 2010). Section 1983 did not abrogate the Eleventh Amendment or provide a jurisdictional basis

---

[1]In light of plaintiff's pro se status, the Court liberally construes his pleadings, *see Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991), but may not act as his advocate. *See Hall*, 935 F.2d at 1110.

[2]Plaintiff did not object to this construction of his complaint. Although the complaint makes passing references to discrimination on account of disability, *see* Docket No. 1 at 3, ¶¶ 2-3, the complaint does not appear to be asserting any disability-related claims against defendants.

for suit against a state official acting in his or her official capacity.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  Therefore, to that extent, the Court will dismiss plaintiff's complaint for lack of subject matter jurisdiction.  *See Fent v. Okla. Water Res. Bd.*, 235 F.3d 553, 558-59 (10th Cir. 2000).  The Court, however, disagrees with the Recommendation to the extent it found that the complaint failed to state any claim for injunctive relief against any of the defendants.  The Court is permitted to exercise subject matter jurisdiction to the extent the complaint requests prospective injunctive relief.  *See Quern v. Jordan*, 440 U.S. 332, 337 (1979) ("[A] federal court, consistent with the Eleventh Amendment, may enjoin state officials to conform their future conduct to the requirements of federal law [pursuant to *Ex parte Young*, 209 U.S. 123 (1908)].").  The Court construes plaintiff's complaint as requesting, *inter alia*, that his pain be treated more effectively and that he receive corrective surgery.[3]

Turning to the merits of plaintiff's Eighth Amendment claim, the Court concludes that the operative complaint fails to state a viable claim against defendants.  Plaintiff

---

[3] After the filing of his complaint, plaintiff filed a motion for preliminary injunction [Docket No. 17] requesting that he be hospitalized for corrective surgery and adequate treatment for his pain and a resulting infection.  Plaintiff has requested leave to file a reply in support of that motion out of time [Docket No. 38].  The Court will grant that motion and has considered the substance of plaintiff's arguments.  For the reasons discussed herein, the Court concludes that plaintiff has not stated a claim for an Eighth Amendment violation relating to the treatment for the hip and surrounding pain.  The Court further notes that plaintiff has informed the Court that he "has been moved from the Sterling Correctional facility and placed in the Denver Reception and Diagnostic Center . . . [a]waiting hip replacement surgery."  Docket No. 80 at 1.  As for the infection, plaintiff has since informed the Court that, as of late February 2012, he was receiving antibiotics for the infection.  Therefore, the Court will accept the Recommendation of United States Magistrate Judge [Docket No. 34], which recommends that the Court deny plaintiff's motion for preliminary injunction [Docket No. 17].

alleges that defendant JoAnn Stock, a physician assistant at Sterling, ignored his complaints of pain and failed to adequately diagnose and treat the medical issues that arose after plaintiff's hip replacement. The complaint does not reveal that plaintiff's pain was ignored but rather describes his disagreement with defendant Stock's decision to prescribe a particular medication to treat the pain. "[A] prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation." *Perkins v. Kansas Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999). Furthermore, plaintiff alleges that defendant Stock misdiagnosed and mistreated his post-operative conditions, thereby "delaying and denying a requested corrective surgery." Docket No. 1 at 6. Although the complaint's allegations, taken as true, could state a claim for medical malpractice in this regard,[4] that alone is insufficient to support an Eighth Amendment claim. *See Perkins*, 165 F.3d at 811 (stating that the "negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation").

There are situations where delay and denial of care can so obviously fail to address serious medical issues so as to amount to deliberate indifference. *See Self v. Crum*, 439 F.3d 1227, 1232 (10th Cir. 2006). As the Tenth Circuit stated in *Self*,

> obviousness in the circumstances of a missed diagnosis or delayed referral, while not subject to a precise formulation, requires direct or circumstantial evidence that can arise in several different contexts: (1) a medical professional recognizes an inability to treat the patient due to the seriousness of the condition and his corresponding lack of expertise but

---

[4]For instance, plaintiff alleges that the "defective hip replacement the plaintiff received during the surgery is known to fracture without warning," Docket No. 1 at 5, and that defendant Stock did not "discuss the option of a possible corrective surgery, or [that] defective parts could be the cause of the severe pain . . . ." *Id.* at 6.

4

> nevertheless declines or unnecessarily delays referral, e.g., a family doctor knows that the patient needs delicate hand surgery requiring a specialist but instead of issuing the referral performs the operation himself; (2) a medical professional fails to treat a medical condition so obvious that even a layman would recognize the condition, e.g., a gangrenous hand or a serious laceration; and (3) a medical professional completely denies care although presented with recognizable symptoms which potentially create a medical emergency, e.g., a patient complains of chest pains and the prison official, knowing that medical protocol requires referral or minimal diagnostic testing to confirm the symptoms, sends the inmate back to his cell.

*Id.* (citations omitted). The complaint does not allege facts that would indicate failure to recognize and address such an obvious medical need.

Through motions he has filed, however, plaintiff has indicated that he has since been diagnosed with a serious staphylococcus aureus infection in his totally-replaced hip, but received no treatment for the infection. *See, e.g.*, Docket No. 43 at 2. Plaintiff supplies a medical record from October 25, 2011 stating that he "will need a work up for septic total hip" which "will include hip aspiration, infectious disease consul[t]ation and probable staged revision surgery." Docket No. 31 at 4. It appears, however, that plaintiff's staph infection may not have been treated until late February 2012. *See* Docket No. 43 at 2, 5. A delay in the provision of medical treatment can violate the Eighth Amendment if the delay reflects "deliberate indifference which results in substantial harm." *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993). Substantial harm is defined as a "lifelong handicap, permanent loss, or considerable pain." *Garrett v. Stratman*, 254 F.3d 946, 949-50 (10th Cir. 2001).

Upon review of plaintiff's filings, the Court concludes that plaintiff may be able to state a plausible Eighth Amendment claim arising out of the failure to treat the staph

infection. Therefore, the Court will permit plaintiff to file an amended complaint asserting an Eighth Amendment claim relating to the treatment of his staph infection. Until he does so, plaintiff's motions for summary judgment are premature and will be denied without prejudice.[5]

Plaintiff has informed the Court that he "has been moved from the Sterling Correctional facility and placed in the Denver Reception and Diagnostic Center (DRDC) [a]waiting hip replacement surgery." Docket No. 80 at 1. Plaintiff contends that he was not permitted to bring documents and does not have access to a law library while at the DRDC. Furthermore, plaintiff does not know how long recovery from such surgery will take. Consequently, plaintiff has requested an "extension" of time until January 25, 2013 to respond to any pleadings. *See* Docket No. 84, 86. There are no present pleadings to which plaintiff must reply. However, when setting the deadline for plaintiff to amend his complaint, the Court will take plaintiff's present status into consideration. Furthermore, to the extent plaintiff's motion for reconsideration [Docket No. 86] can be construed as requesting an extension of time to comply with his filing fee payment obligations, *see* Docket No. 80, the Court will refer the motion to the magistrate judge.

The Recommendation also construed plaintiff's complaint as alleging a retaliation claim. The Court agrees with the Recommendation that plaintiff has failed to

---

[5]The Court reminds plaintiff that, when drafting such a complaint, only those individuals who personally participated in any of the relevant conduct should be named as defendants. *See Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976) (personal participation in the alleged constitutional violation is an essential element of a § 1983 action); *see also Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993) ("A supervisor is not liable under § 1983 unless an 'affirmative link' exists between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise.").

state a plausible claim that any defendant retaliated against him for engaging in protected activity. Rather, he essentially alleges, without any supporting facts, that the failure to treat his medical conditions was due to his complaints about such failures. The Court also agrees with the Recommendation that plaintiff fails to state a due process claim pursuant to the Fourteenth Amendment based on his allegation that, in the absence of a law firm having informed defendants that the hip joint he was provided was defective, defendants would still be denying him treatment. That allegation does not indicate how any procedural due process rights were violated. Furthermore, it does not support the inference that *after* receiving such information, defendants "proceeded in conscious and unreasonable disregard of the consequences" and thus violated plaintiff's substantive due process rights. See *Uhlrig v. Harder*, 64 F.3d 567, 574 (10th Cir. 1995) (citation and quotation marks omitted).

The Recommendation construed plaintiff's complaint as asserting a due process claim arising out of the involuntary administration of psychotropic drugs. Plaintiff alleged in his complaint that, in response to his complaints regarding his hip, defendant JoAnn Stock, a physician assistant, told him that he would take Elavil "or nothing at all." Docket No. 1 at 6. Although the complaint is not entirely clear about the stated purpose for defendant Stock's prescribing Elavil, it appears that it was intended as a pain reliever. *Cf., e.g.*, Docket No. 72 at 14 (where plaintiff wrote in a CDOC grievance that defendant Stock "explained to [him] that 'Elavil' was the only medication that she can prescribe for the pain in his hips and lower back"). Plaintiff's complaint implies, *see* Docket No. 1 at 6, and defendants admit that Elavil is a psychotropic drug. *See* Docket No. 61 at 4. It apparently has an off-label use as a pain reliever.

The Supreme Court recognizes "a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment." *Washington v. Harper*, 494 U.S. 210, 221-22 (1990) (citations omitted). "[F]orcing antipsychotic drugs on a convicted prisoner is impermissible absent a finding of overriding justification and a determination of medical appropriateness." *Riggins v. Nevada*, 504 U.S. 127, 135 (1992) (citing *Harper*, 494 U.S. at 229). As the Recommendation noted, the compulsion necessary to support such a claim may not be limited solely to being medicated forcibly, citing *Bundy v. Stommel*, 168 F. App'x 870 (10th Cir. 2006). In *Bundy*, the court determined that a due process claim based on the argument that forcing an "inmate to choose between taking unwanted antipsychotic drugs and eligibility for parole" was not legally frivolous pursuant to 28 U.S.C. § 1915A. *See id.* at 873. Here, plaintiff was given the choice of taking Elavil or suffering pain without it.

Defendants have asserted the defense of qualified immunity to plaintiff's due process claim relating to the involuntary administration of psychotropic drugs. Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Upon a public official's assertion of a qualified immunity defense, plaintiff bears a "heavy burden" under a two-pronged analysis. *See Buck v. City of Albuquerque*, 549 F.3d 1269, 1277 (10th Cir. 2008). Under the first prong of the analysis, the plaintiff is

required to "establish that the defendant's actions violated a constitutional or statutory right." *Smith v. Cochran*, 339 F.3d 1205, 1211 (10th Cir. 2003) (quoting *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1185 (10th Cir. 2001)). Under the second prong, the plaintiff must show that the right at issue was "clearly established" at the time of the defendant's alleged misconduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).[6]

The Court need not determine whether plaintiff's choice of taking Elavil as a pain reliever or taking no pain reliever at all implicates plaintiff's "liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment," *Washington*, 494 U.S. at 221-22, because the Court concludes that it was not clearly established at the time that such was the case. *See Pearson v. Callahan,* 555 U.S. 223, 236 (2009) (permitting courts to exercise discretion "in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances"). As an initial matter, the Court does not believe that *Bundy*, an unpublished ruling regarding whether the particular facts of that

---

[6]"Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Qualified immunity provides a defense to trial and the other burdens of litigation such as discovery, rather than just liability. *See Saucier v. Katz,* 533 U.S. 194, 200 (2001), *overruled on other grounds by Pearson*, 555 U.S. 223. Therefore, a court is to resolve questions of qualified immunity at the earliest possible stage of litigation. *Anderson v. Creighton,* 483 U.S. 635, 646 n.6 (1987). However, a plaintiff facing a qualified immunity challenge still does not have a heightened pleading standard. *Currier v. Doran,* 242 F.3d 905, 916-17 (10th Cir. 2001); *see id.* at 914 (although qualified immunity protects public officials "from the costs associated with defending against lawsuits, particularly baseless ones, it d[oes] not follow that a defendant's claim of qualified immunity c[an] always be resolved before at least some discovery [is] conducted.") (citing *Crawford-El v. Britton*, 523 U.S. 574, 591-93 & 593 n.14 (1998)).

case presented a non-frivolous claim pursuant to § 1915A, clearly establishes that the choice presented in that case implicates a liberty interest. *Cf. Green v. Post*, 574 F.3d 1294, 1306 n.10 (10th Cir. 2009) ("In determining whether the law was clearly established, we have held that we may not rely upon unpublished decisions."). In any event, the choice presented to plaintiff here is not clearly comparable to that presented in *Bundy*. As defendants point out, defendant Stock prescribed Elavil in response to plaintiff's complaints of pain, not to treat a psychological condition. *See* Docket No. 61 at 4 ("Elavil, while an antidepressant, also has an off label use for pain management."). Based on reading *Washington* and *Bundy*, it would not have been clear to defendant Stock that prescribing Elavil for pain relief, i.e., to achieve a goal requested by plaintiff,[7] would implicate a liberty interest. *Casey v. City of Fed. Heights,* 509 F.3d 1278, 1283-84 (10th Cir. 2007) (stating that it must "be clear to a reasonable officer that his conduct was unlawful in the situation he confronted" for a right to be clearly established) (quoting *Saucier,* 533 U.S. at 202); *see also Anderson v. Creighton,* 483 U.S. 635, 640 (1987). Therefore, to the extent plaintiff's complaint can be read to assert a due process claim arising out of the Elavil prescription, defendant Stock is entitled to qualified immunity.

Finally, the magistrate judge recommends that plaintiff's motion to supplement his complaint [Docket No. 22] be denied as futile. The Court agrees with the

---

[7]"[A] competent person has a constitutionally protected liberty interest in refusing unwanted medical treatment." *Cruzan by Cruzan v. Director, Missouri Dept. of Health*, 497 U.S. 261, 278 (1990). As defendants point out, plaintiff does not object to receiving medication for his pain – indeed, it appears clear that he desired medication for his pain – but rather objects to the particular medication prescribed.

Recommendation that plaintiff's proposed retaliation claim against a new defendant would be futile. For the reasons discussed above, however, the Court does not rule out the possibility that the treatment surrounding his infection after October 25, 2011 might support a plausible Eighth Amendment claim. Because the Court will grant leave to plaintiff to amend his complaint, the motion to supplement will be denied as moot.

For the foregoing reasons, it is

**ORDERED** that the Recommendation of United States Magistrate Judge [Docket No. 56] is ACCEPTED in part and REJECTED in part. It is further

**ORDERED** that defendants' motion to dismiss [Docket No. 29] is GRANTED. It is further

**ORDERED** that, to the extent plaintiff seeks money damages from defendants in their official capacities, his complaint is dismissed for lack of subject matter jurisdiction. The remainder of plaintiff's complaint is otherwise dismissed for failure to state a claim. It is further

**ORDERED** that plaintiff's motions for summary judgment [Docket Nos. 31, 43] and motion to justify summary judgment [Docket No. 50] are DENIED without prejudice. It is further

**ORDERED** that defendants' motions to strike plaintiff's motions for summary judgment [Docket Nos. 35, 48] are DENIED as moot. It is further

**ORDERED** that plaintiff's motion for leave to file reply in support of his motion for preliminary injunction out of time [Docket No. 38] is GRANTED. It is further

**ORDERED** that the Recommendation of United States Magistrate Judge [Docket

No. 34] is ACCEPTED and plaintiff's motion for preliminary injunction [Docket No. 17] is DENIED.  It is further

    **ORDERED** that plaintiff's motion to supplement his complaint [Docket No. 22] is DENIED in part as requesting leave to file a futile claim and in part as moot.  It is further

    **ORDERED** that plaintiff's motion to supplement his objections [Docket No. 72] is GRANTED.   It is further

    **ORDERED** that plaintiff's motion for reconsideration [Docket No. 86] is DENIED as moot to the extent it seeks an extension of deadlines to respond to pleadings.  To the extent the motion can be construed to request an extension of time to comply with filing fee payment obligations, the motion shall be referred to the magistrate judge.  It is further

    **ORDERED** that plaintiff may file an amended complaint consistent with the foregoing within sixty days of entry of this order.  If plaintiff has not received his surgery and sufficiently recovered to file an amended complaint before that time, he may seek an extension of that deadline.

    DATED August 22, 2012.

                                            BY THE COURT:

                                            s/Philip A. Brimmer
                                            PHILIP A. BRIMMER
                                            United States District Judge