IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11–cv–02050–PAB–KMT

MICHAEL TIVIS,

      Plaintiff,

v.

BEVERLY DOWIS, in her individual and official capacity as Health Service Administrator for SCF,
NICOLE WILSON, in her individual capacity,
DR. PAULA FRANTZ, in her individual and official capacity as Chief Medical Officer for the Colorado Department of Corrections,
MEGHAN REED, in her individual capacity and official capacity as ADA Inmate Coordinator for the State of Colorado,
PHYSICIAN HEALTH PARTNERS, Inc. d/b/a CORRECTIONAL HEALTH PARTNERS, a Colorado Corporation, and
DR. STEVEN KREBS, in his individual capacity,

      Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Magistrate Judge Kathleen M. Tafoya**

      This case comes before the court on Defendant Beverly Dowis, Nicole Wilson, and Meghan Reeds' "Partial Motion to Dismiss."  (Doc. No. 155, filed Oct. 18, 2013.)  For the following reasons, Defendants Dowis, Wilson, and Reed's (hereinafter "Defendants") Motion to Dismiss is GRANTED.

**FACTUAL BACKGROUND**

Plaintiff is an inmate in the Colorado Department of Corrections (CDOC) and is currently housed at the Sterling Correctional Facility (SCF).  Generally, Plaintiffs' Second Amended Complaint (Doc. No. 138 [SAC]) targets Defendants' actions in response to complications following his total hip replacement surgery in June 2009.  More specifically, Plaintiff asserts that a little over a year after his surgery, the manufacturer of the hip implant installed during his surgery voluntarily recalled the device because it was defective and could cause swelling; infection; nerve, tissue, and muscle damage; and dislocate or fracture the bone to which it attached.  (SAC ¶¶ 13-14.)  Further, Plaintiff saw at least two specialists who concluded that Plaintiff was suffering from a serious septic hip infection and required immediate surgery. (*See id.* ¶¶ 21-29.)  Nevertheless, beginning days after his hip replacement surgery, Defendants allegedly ignored Plaintiff's complaints of severe pain, delayed addressing his postoperative problems, and failed to ensure that he received timely and adequate treatment, including surgical intervention.

With that general background established, the court notes that a detailed recitation of facts is not necessary to address Defendants' Partial Motion to Dismiss.  Instead, Defendants' Motion to Dismiss concerns only three claims that arise out of a more limited factual background: (1) Plaintiff's second claim under 42 U.S.C. § 1983 against Defendant Wilson for violations of his Eighth Amendment rights; (2) Plaintiff's fifth claim against Defendants Reed,

2

Dowis, and Frantz[1] in their official capacities[2] for violations of Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, *et seq.*; and (3) Plaintiff's sixth claim against Defendants Reed, Dowis, and Frantz in their official capacities for violations of Section 504 of the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*

### A.      *Background for ADA and Rehabilitation Act Claim*

Plaintiff has been designated as a mobility disabled class member since October 13, 2009.  (SAC ¶ 87; Mot Dismiss, Ex. A-2.)[3]  On April 28, 2011, Plaintiff filed a grievance stating that, approximately one year prior, he missed doses of his medication because he refused to stand in the "rain, snow and severe cold" while waiting in the "med-line" where SCF Clinical Services distributes daily medications.  (Mot. Dismiss, Ex. A-1.)  Sometime thereafter, Plaintiff was allegedly informed by non-party Physician's Assistant Stock that Clinical Services would no longer be providing him with his pain medication, despite his severe pain from his disability, because he "missed those days."  (*Id.*)  Plaintiff allegedly filed his grievance "only after his

---

[1] Although Defendant Frantz has not joined in Defendants' Partial Motion to Dismiss, because Plaintiff is proceeding *in forma pauperis* (Doc. No. 7)*,* the court is authorized to dismiss claims *sua sponte* when they fail to state a claim for relief*,* 28 U.S.C. § 1915(e)(1)(B)(ii).

[2] The court must presume that his ADA and Rehabilitation Act claims are lodged against Defendants Reed, Dowis, and Frantz in their official capacities as 'individual defendants in their individual capacities are not properly subject to suit under the Rehabilitation Act' or the ADA." *Ayotte v. McPeek,* No. 08-cv-02508-WJM-MJW, 2011 WL 2531255, at *5 (quoting *Montez v. Romer,* 32 F. Supp. 2d 1235, 1241 (D. Colo. 1999)).

[3] The court finds that it may consider Plaintiff's grievance, as well as Defendant Reed's response discussed *infra*, without converting Defendant's Motion to Dismiss into a motion for summary judgment because these documents are referred to in the Second Amended Complaint, are central to Plaintiff's claims, and the parties do not dispute their authenticity.  *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002) (At the motion to dismiss stage, "the district may consider documents referred to in the complaint if the documents are central to the plaintiff's claims and the parties do not dispute the documents' authenticity.").

simple request to be allowed to enter a shorter 'med-line' was denied." (SAC ¶ 91.) Among

other things,[4] Plaintiff requested "adequate pain relief" in response to his grievance. (Mot.

Dismiss, Ex. A-1.)

Defendant Reed, the CDOC's ADA Inmate Coordinator (AIC), denied Plaintiff's

grievance. In her Response, Defendant Reed stated that the "

> 1. AIC is not a medical professional and has no authority to prescribe pain relief
> or order restrictions and is generally not involved with a disabled offender's
> medical treatment. Accommodation, which may be approved through the AIC
> and may work in conjunction with restrictions, is defined as: any structural or
> procedural modification or adjustment to rules, policies, or practices; the removal
> of architectural, communication, or transportation barriers; or provision of
> auxiliary aids, equipment, or services, to ensure individuals with disabilities have
> **equal access** to services, activities, and programs for which they are otherwise
> qualified to participate in or benefit from.
>
> 2. The AIC cannot control which providers you see and would not have access to
> the pharmaceutical record in question . . . .

(Mot. Dismiss, Ex. A-2) (emphasis in original.) Defendants Dowis and Frantz allegedly knew of

Plaintiff's April 28, 2011 grievance and Defendant Reed's denial thereof. (*See* SAC ¶¶ 81, 143.)

**B.     *Background for § 1983 Claim against Defendant Wilson***

Defendant Wilson is a records technician at SCF who, beginning in June 2009, was

designated as a "grievance coordinator" during the time period relevant to Plaintiffs' claims.

(SAC ¶ 4.) In this role, Defendant Wilson was allegedly responsible for reviewing and

---

[4] Plaintiff also sought to have "no more contact with P.A. Stock," to be provided with "a copy of
CDOC Order stating DOC no longer uses T-3 for pain," and to "return all restrictions." (Mot.
Dismiss, Ex. A-1.)

processing Plaintiff's grievances.  (*Id.* ¶ 83.)  Defendant Wilson was also responsible for arranging appointments with outside specialists.  (*Id.* ¶ 4.)

Between July 2009 and the present, Defendant Wilson allegedly received dozens of grievances from Plaintiff describing "infection, pain, torture, hopelessness and his overall desire to be treated for his condition."  (*Id.* ¶¶ 56-57.)  Defendant Wilson allegedly "rejected several of his grievances citing bogus procedural deficiencies, resulting in delays in the provision of medical care for his serious medical needs."  (*Id.* ¶ 84.)  Further, in April 2012, Defendant Wilson allegedly ignored the request of Dr. Fauvel[5] to check on the approval and scheduling of Plaintiff's urgent hip osteotomy.  (*Id.* ¶ 85.)

## PROCEDURAL BACKGROUND

Plaintiff's Original Prisoner Complaint, filed August 5, 2011 (Doc. No. 1), was dismissed a year later on August 22, 2012.  (Order, Doc. No. 87.)  However, as part of the Order of Dismissal, District Judge Philip A. Brimmer granted Plaintiff leave to file an Amended Complaint asserting an Eighth Amendment claim relating to the treatment of his staph infection. (*See id.* at 6, 12.)

Plaintiff subsequently retained counsel, and after receiving several extensions of time (*see* Doc. Nos. 97, 99, 103), filed an Amended Complaint on February 5, 2013.  (Doc. No. 104.) This court subsequently struck this Amended Complaint, however, because it exceeded the scope of Judge Brimmer's Order.  (Order, Doc. No. 112, filed March 13, 2013.)  On April 30, 2013,

---

[5] Plaintiff's Second Amended Complaint does not provide any background on Dr. Fauvel, such as whether he is a doctor with the CDOC or an outside physician.  (*See* SAC ¶¶ 85, 125.)

Plaintiff filed an Amended Complaint in compliance with Judge Brimmer's Order (Doc. No. 121.)  Shortly thereafter, on May 6, 2013, Plaintiff filed a Motion for Leave to Amend the Operative Complaint seeking to add additional claims for relief.  (Doc. No. 122.)  On June 25, 2013, the court granted Plaintiff's Motion to Amend and Plaintiff's Second Amended Complaint was filed contemporaneously with that Order.  (Order, Doc. No. 137.)

Defendants Stephen Krebs and Physician Health Partners, Inc. filed an Answer on October 14, 2013.  (Doc. No. 154.)  After receiving several extensions of time to respond to the Second Amended Complaint (*see* Minute Orders, Doc. Nos. 141, 147), the remaining defendants filed an Answer on October 18, 2014.  (Doc. No. 156.)

Defendants' Partial Motion to Dismiss was also filed on October 18, 2014.  (*See* Mot. Dismiss.)  Plaintiff's Response was filed on December 30, 2013.  Defendants did not file a reply. Accordingly, this matter is ripe for the court's review and recommendation.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v.*

*Bellmon*, 935 F.2d 1106, 1198 (10th Cir. 1991).  "To survive a motion to dismiss, a complaint

must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible

on its face.' "  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Plausibility, in the context of a motion to dismiss,

means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged."  *Id*.  The *Iqbal* evaluation requires two

prongs of analysis.  First, the court identifies "the allegations in the complaint that are not

entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare

assertions, or merely conclusory.  *Id*. at 1949–51.  Second, the Court considers the remaining

factual allegations "to determine if they plausibly suggest an entitlement to relief."  *Id*. at 1951.

If the allegations state a plausible claim for relief, such claim survives the motion to dismiss.  *Id*.

at 1950.

 Notwithstanding, the court need not accept conclusory allegations without supporting

factual averments.  *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir.

1998).  "[T]he tenet that a court must accept as true all of the allegations contained in a

complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 129 S. Ct. at 1940.

Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the

elements of a cause of action will not do.'  Nor does the complaint suffice if it tenders 'naked

assertion[s]' devoid of 'further factual enhancement.' "  *Id.* at 1949 (citation omitted).  "Where a

complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of

7

the line between possibility and plausibility of entitlement to relief." *Iqbal*,129 S. Ct. at 1949 (citation omitted).

In making the required determination, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322 (2007); *see also Utah Gospel Mission v. Salt Lake City Corp*., 425 F.3d 1249, 1253-54 (10th Cir. 2005) ("[A] document central to the plaintiff's claim and referred to in the complaint may be considered in resolving a motion to dismiss, at least where the document's authenticity is not in dispute."); *Kennedy v. Peele*, 552 F. App'x 787, Case No. 11-cv-00967-REB-KMT, 2014 WL 92251, *4 (10th Cir. January 10, 2014). "[F]actual allegations that contradict . . . a properly considered document are not well-pleaded facts that the court must accept as true." *GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1385 (10th Cir. 1997).

## ANALYSIS

### A.  *ADA and Rehabilitation Act Claims*

#### 1.  *Statute of Limitations*

Defendants argue that Plaintiff's ADA and Rehabilitation Act claims should be dismissed because they are barred by the application statute of limitations.  (Mot. Dismiss at 3-4.)  The court disagrees.

Although a statute of limitations bar is an affirmative defense, questions regarding the statute of limitations may be resolved under Rule 12(b)(6) when it is clear from the face of the

complaint that the right sued upon has been extinguished.  *Aldrich v. McCulloch Props., Inc.,* 627 F.2d 1036, 1041 n.4 (10th Cir. 1980); *see also Jackson v. Standifird,* 463 F. App'x 736, 738 (10th Cir. 2012) ("Dismissal of a claim as time-barred is treated as a dismissal for failure to state a claim.")

The parties do not dispute that a two-year statute of limitations applies to ADA and Rehabilitation Act claims.  *Hughes v. Colo. Dep't of Corrs.,* 594 F. Supp. 2d 1226, 1235 (D. Colo. 2009); *Ulibarri v. City & Cnty. of Denver,* 742 F. Supp. 2d 1192, 1213 (D. Colo. 2010). "In general . . . claims accrue and the statute of limitations begins to run when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action." *Alexander v. Oklahoma,* 382 F.3d 1206, 1215 (10th Cir. 2004).  "A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence. *Indus. Constructors Corp. v. U.S. Bureau of Reclamation,* 15 F.3d 963, 969 (10th Cir. 1994).

Defendants argue that Plaintiff's claims accrued in April or May 2010 when P.A. Stock informed Plaintiff that the pharmacy would no longer provide him with his pain medication because he missed doses.  (Mot. Dismiss at 4-5.)  Plaintiff, on the other hand, asserts that his ADA and Rehabilitation Act claim accrued in May 2011, when his grievance regarding his pain medication was denied by Defendant Reed.  (Resp. at 5-6.)

However, even assuming that Plaintiff's claims accrued when P.A. Stock stopped his pain medications, the court cannot find that Plaintiff's claims are barred by the statute of limitations.  First, the only date featured in the Second Amended Complaint relating to Plaintiff's

9

ADA and Rehabilitation Act claims is May 2011, when Defendant Reed responded to Plaintiff's grievance.[6]  (SAC ¶ 87.)  Second, and more importantly, the copy of Plaintiff's grievance to Defendant Reed attached to Defendants' Motion only states that "approximately a year ago [from April 28, 2011]," he and other inmates refused to stand in the rain, snow, and severe cold to receive their medication.  (Mot. Dismiss, Ex. A-1.)  The grievance does not state the specific date when P.A. Stock informed him that he would no longer be receiving his pain medication due to those actions.  (*See id.*)  The court cannot presume that P.A. Stock's decision came shortly after Plaintiff missed his doses—the dates given must make it *clear* that Plaintiff's claims are barred.  *Aldrich,* 627 F.2d at 1041.  Accordingly, the court cannot find at this juncture that Plaintiff's ADA and Rehabilitation act are barred by the applicable statute of limitations.

### 2.      *Failure to State a Claim for Relief*

Defendants argue that, even if Plaintiff's ADA and Rehabilitation Act claims are not time barred, they fail to state a claim for relief.  (Mot. Dismiss at 4-7.)  Although the court disagrees with some of the arguments lodged by Defendants, it ultimately agrees that Plaintiff fails to state a claim under the ADA or Rehabilitation Act.

Because "[t]he Rehabilitation Act is materially identical to and the model for the ADA," the elements of claims asserted under the statutes are the same, except that the Rehabilitation Act

---

[6] Curiously, Defendants do not argue that Plaintiff's claims would be time-barred if this event marks the accrual of his ADA and Rehabilitation Act claims, even though Plaintiff's Second Amended Complaint was not filed until June 25, 2013.  The court presumes that Defendants believe Plaintiff's claims might relate back one of the earlier version(s) of his complaint.  *See* Fed. R. Civ. P. 15(c).  Although the court could resolve this issue *sua sponte, see* 28 U.S.C. § 1915(e)(2)(B)(ii), the court declines to do so at the dismissal stage without briefing on the relation-back issue.

10

requires that defendant receive federal funds.  *Crawford v. Ind. Dept. of Corrs.,* 115 F.3d 481, 483 (7th Cir. 1997) *abrogated on other grounds as recognized in Erickson v. Board of Govs.,* 207 F.3d 945, 948 (7th Cir. 2000).  "To state a claim under the ADA (and the Rehabilitation Act) a 'plaintiff must allege that: (1) he is a qualified individual with a disability, (2) who was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, and (3) such exclusion, denial of benefits, or discrimination was by reason of a disability.'"  *Anderson v. Colo. Dept. of Corrs.,* 848 F. Supp. 2d 1291, 1300 (D. Colo. 2012) (quoting *Robertson v. Las Animas County Sheriff's Dep't,* 500 F.3d 1185, 1193 (10th Cir. 2007)).

Defendants do not dispute that Plaintiff is a qualified individual with a disability. Instead, they argue that Plaintiff's ADA and Rehabilitation Act claims fail because neither the ADA nor the Rehabilitation Act provides a remedy for allegedly inadequate medical treatment. (Mot. Dismiss at 5 (citing *Fitzgerald v. Corrs. Corp. of Am,* 403 F.3d 1134 (10th Cir. 2005); *Johnson by Johnson v. Thompson,* 971 F.2d 1487 (10th Cir. 1992); *Rashad v. Doughty,* 4 F. App'x 558, 560 (10th Cir. 2001)).  The court finds that *Fitzgerald, Johnson, and Rashad* are all distinguishable from the facts alleged by Plaintiff.  In each of those cases, the plaintiffs alleged that medical professionals negligently diagnosed or treated, or outright failed to treat, their medical conditions.  *Fitzgerald,* 403 F.3d at 1144-45 (doctor's recommendation that prison may "do nothing" as an acceptable course of treatment was "the sort of purely medical decision" that falls outside the scope of the ADA and Rehabilitation Act); *Johnson,* 971 F.2d at 1493-94 (failure to provide corrective surgery for birth defect not cognizable under the Rehabilitation

11

Act); *Rashad,* 4 F. App'x at 560 (allegedly inadequate treatment of post-traumatic stress disorder failed to state a claim for relief under the ADA).

Here, Plaintiff does not allege he was denied access to pain medication by way of such a "purely medical decision." *Fitzgerald,* 403 F.3d at 1134. Instead, he alleges that decisions made by a non-medical professional prevented him from accessing prescription pain medication available to other inmates. The Tenth Circuit has recognized an ADA claim may be viable under such circumstances. *Rashad,* 4 F. App'x at 560 (citing *McNally v. Prison Health Servs.,* 46 F. Supp. 2d 49, 58 (D. Me. 1999)) (an HIV patient's claim of discriminatory denial of prescription services provided to general prison population would state an ADA claim).[7]

Defendants also argue that Plaintiff fails to allege facts suggesting that he was denied access to his prescriptions on account of his disability. (Mot. Dismiss at 7.) At the outset, the court notes that Plaintiff's ADA and Rehabilitation claims are premised entirely on Defendant Reed's denial of his April 28, 2011 grievance, and Defendant Dowis's and Frantz's knowledge of the denial of that grievance. (*See* SAC ¶¶ 86-97, 140-149; *see also* Resp. at 2-4, 7-8.) Plaintiff's claims do not challenge non-party Stock's revocation of Plaintiff's pain medication.

There are three methods of proving discrimination in violation of Title II of the ADA: "(1) intentional discrimination; (2) discriminatory impact; and (3) a refusal to make a reasonable modification." *Swenson v. Lincoln Cnty. Sch. Dist. No. 2,* 260 F. Supp. 2d 1136, 1144 (D. Wyo.

---

[7] This also disposes of Defendants' argument that "it is unclear what service, program, activity [Plaintiff] was excluded from, or denied the benefits of." (Mot. at 6.) *Rashad* recognizes that a denial of prescription services may satisfy the second element of an ADA claim. 4 F App'x at 558 (citing *McNally,* 46 F. Supp. 2d at 58).

12

2003); *see Robertson,* 500 F.3d at 1195.

The court first rejects that Defendant Reed intentionally discriminated against him based on his disability.  To establish intentional discrimination, Plaintiff must affirmatively allege that his disability was "a determining factor" in the decision to deny his April 28, 2011 grievance. *See Selenke v. Med. Imaging of Colo.,* 248 F.3d 1249, 1259 (10th Cir. 2001).  "Although discriminatory motive need not be the sole reason for the defendant's actions, it must be a 'determining factor.'"  *Carter v. Pathfinder Energy Servs., Inc.,* 662 F.3d 1134, 1149 (10th Cir. 2011).

Here, Plaintiff's disability was not a determining factor in Defendant Reed's denial of Plaintiff's grievance.  Instead, the grievance response attached to Defendant's Motion clearly establishes that Defendant Reed denied Plaintiff's grievance, which sought reinstatement of his pain medication, because the AIC "is not a medical professional and has no authority to prescribe pain relief" and "is generally not involved with a disabled offender's medical treatment."  (Mot. Dismiss, Ex. A-2.)  There are no allegations suggesting that Defendant Reed rejected Plaintiff's grievance based on his disability.

A closer call is whether Defendant Reed refused to make a reasonable accommodation. In order to show discrimination based on a refusal to make a reasonable accommodation, a plaintiff must show the defendant both (1) knew of his disability and (2) knew of his need for an accommodation.  *Robertson,* 500 F.3d at 1196-97.

In his grievance, Plaintiff clearly stated that he had a mobility disability.  (Mot. Dismiss, Ex. A-1.)  The only question then is whether Defendant Reed knew of his request for an

13

accommodation.

A Defendant's knowledge that an individual requires an accommodation may arise in two ways. First, "this knowledge may derive from an individual's request for an accommodation." *Robertson,* 500 F.3d at 1197. Second, "in certain instances" this knowledge will follow from the defendant's "knowledge of the individual's disability and his need for, or attempt to participate in or receive the benefits of, a certain service." *Id.* In other words, under some circumstances, an individual's need for an accommodation will be "obvious." *Id.; see also Kiman v. N.H. Dep't of Corrs.,* 451 F.3d 274, 283 (1st Cir. 2006) *cited with approval in Robertson,* 500 F.3d at 1197 (noting, in a Title II case, that "the ADA's reasonable accommodation requirement usually does not apply unless triggered by a request," but "sometimes the person's [disability and concomitant] need for an accommodation will be obvious").

First, the court rejects Plaintiff's allegation that his April 28, 2011 grievance "made clear that the facility was discriminating against [him] by forcing [him] to participate in a medication distribution protocol that required [him] to ambulate long distances and wait in line with able-bodied inmates." (SAC ¶ 90.) Instead, upon review, Plaintiff's grievance only establishes that he missed doses after he refused to "stand in the rain, snow, and severe cold"; had his pain medication discontinued as a consequence; and sought to have his pain medication reinstated. (Mot. Ex. A-1.) There is nothing in the grievance to suggest that Plaintiff was requesting any accommodation with respect to the med-line going forward. *GFF Corp.,* 130 F.3d at 1385 ("[F]actual allegations that contradict . . . a properly considered document are not well-pleaded facts that the court must accept as true.")

14

Second, the court is not convinced that Plaintiff's need for an accommodation was obvious to Defendant Reed.  Plaintiff does not allege that Defendant Reed had any prior interaction with him, much less knowledge of the limitations that his disability placed upon him. And, although he alleges that he filed his grievance shortly after having his request to be allowed to enter a shorter "med line" was denied (SAC ¶ 91), he did not raise the denial of this request in his April 28, 2011 grievance, nor are there any facts suggesting that Defendant Reed otherwise knew that request had been rejected.

Further, although Plaintiff stated in his grievance that he suffers from "severe pain due to [degenerative joint disease] in both hips" (Mot. Dismiss, Ex. A-1), he does not allege, nor did assert in his grievance, that he made repeated attempts to obtain his pain medication, to no avail. *Hughes,* 594 F. Supp. 2d at 1245 (need for accommodation was obvious where the defendant was "unquestionably aware of his repeated attempts to participate in a supervised program of parole.").  Instead, Plaintiff asserted only that he missed doses of his pain medication on a few occasions after he "refused to stand in the rain, snow, or severe cold."  (Mot. Dismiss, Ex. A-1.) Notably, Plaintiff did not assert that he was unable to receive his medication through the med-line regardless of the weather conditions.  Moreover, Plaintiff did not submit his grievance to Defendant Reed to reinstate his pain medication until approximately one year after he declined to stand in adverse weather to receive his pain medication.

Accordingly, because Plaintiff failed to make an explicit request for accommodation and neither the facts alleged nor Plaintiff's grievance establish that it was obvious to Defendant Reed, much less Defendants Dowis and Frantz, that Plaintiff required an accommodation, the

court finds that Plaintiff's allegations fail to establish that Defendant Reed refused to make a reasonable accommodation.  As a consequence, the court finds that Plaintiff fails to state a claim for relief under either the ADA or the Rehabilitation Act.  Therefore, Defendants' Partial Motion to Dismiss is properly granted with respect to Plaintiff's ADA and Rehabilitation Act claims.

**B.**      ***Eighth Amendment Claim against Defendant Wilson***

Defendants argue that Plaintiff's § 1983 claim that Defendant Wilson violated his rights under the Eighth Amendment fails to state a claim for relief.  (Mot. Dismiss at 7-9.)  The court agrees.

The Eight Amendment's ban on cruel and unusual punishment is violated if a defendant's "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain."  *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  A claim for deliberate indifference has both an objective and a subjective component.  To satisfy the objective component, a prisoner must demonstrate that his medical need is "objectively, sufficiently serious."  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (citation omitted).  To satisfy the subjective component, a prisoner must demonstrate that prison officials acted with a "sufficiently culpable state of mind."  *Farmer*, 511 U.S. at 834. "'[D]eliberate indifference' is a stringent standard of fault."  *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown,* 520 U.S.397, 410 (1997).  "A showing of simple or even heightened negligence

will not suffice." *Id.*; *see also Giron v. Corrs. Corp. of Am.,* 191 F.3d 1281, 1286 (10th Cir.

1999).  Instead, the official must "know[] of and disregard[] an excessive risk to inmate health

and safety." *Farmer,* 511 U.S. at 837.  That is, "the official must both be aware of facts from

which the inference could be drawn that a substantial risk of serious harm exists, and he must

also draw the inference." *Id.*

The court first finds that Plaintiff's allegations that Defendant Wilson rejected several of

his grievances are insufficient to state a violation of his Eighth Amendment rights.  Generally,

the "denial of a grievance, by itself without any connection to the violation of constitutional

rights alleged by plaintiff, does not establish personal participation under § 1983." *Gallagher v.

Shelton,* 587 F.3d 1063, 1069 (10th Cir. 2009).  However, the Tenth Circuit has not "rule[d] out

the possibility of liability where the officer denying a grievance has an independent

responsibility for the wrong in question and the grievance provides the necessary notice of the

wrong or the effective means to correct it." *Arocho v. Nafziger,* 367 F. App'x 942, 955 (10th

Cir. 2010).  Nevertheless, such allegations require "plausible factual specification" to withstand a

motion to dismiss. *Id.* at 954.

The court finds that the Second Amended Complaint lacks sufficient factual detail to

support an Eighth Amendment claim against Defendant Wilson based on her denial of Plaintiff's

grievances.  Although Plaintiff alleges that Defendant Wilson received dozens of grievances

describing his "infection, pain, torture, hopelessness and his overall desire to be treated for his

condition" (SAC ¶¶ 56-57), the Second Amended Complaint does not include any factual detail

regarding the specific grievances Defendant Wilson allegedly denied based on "bogus procedural

17

deficiencies" (*id.* ¶ 84).  Without such factual detail, Plaintiff's allegations are merely conclusory.  For all the court knows, the grievances could have been entirely unrelated to his hip infection or other medical needs.  Moreover, even if they were related to his medical needs, in the absence of some factual detail as to the particular concerns raised in the grievances that Defendant Wilson reviewed and denied, the court cannot find that Defendant Wilson knew of and disregard an excessive risk to Plaintiff's health and safety by denying those grievances.  *Id.* at 837.

Plaintiff's allegations that Defendant Wilson failed to check on the approval and scheduling of Plaintiff's urgent hip osteotomy implicate Defendant Wilson's role as a gatekeeper for medical care.  A prison official who "knows that [her] role in a particular medical emergency is solely to serve as a gatekeeper for other medical personnel capable of treating the condition" may be held liable if that person delays or refuses to fulfill that gatekeeper role.  *Sealock v. Colorado,* 218 F.3d 1205, 1209 (10th Cir. 2000).

Although Plaintiff alleges that Defendant Wilson knew that he suffered from intolerable pain in his left hip and had been suffering for years while awaiting proper treatment, the court is not convinced that Defendant Wilson's alleged failure on one occasion to check on the scheduling of, or schedule,[8] his osteotomy rises to the level of deliberate indifference.  The court need not accept Plaintiff's labels that Defendant Wilson "ignored" Dr. Fauvel's request to check on the approval and scheduling of Plaintiff's hip osteotomy (SAC ¶ 85) and "knowingly failed"

---

[8] It is unclear from Plaintiff's allegations whether Defendant Wilson failed to check on the approval and scheduling of Plaintiff's hip osteotomy, or failed to actually schedule the procedure.  (*Compare* SAC ¶ 85 *with id.* ¶ 124.)

18

to schedule Plaintiff for an urgent appointment (*id.* ¶ 124).  *Twombly,* 550 U.S. at 555.  Instead,

under the specific facts alleged, the court finds that it is just as likely that Defendant Wilson's

one-time failure to schedule, or check on the scheduling, of Plaintiff's hip surgery was

inadvertent or negligent.  *Estelle,* 429 U.S. at 104-105 (deliberate indifference is manifested by

prison personnel "intentionally denying or delaying access to medical care."); *Self v. Crum,* 439

F.3d 12227, 1233 (10th Cir. 2006) (a "negligent failure to provide adequate medical care, even

one constituting medical malpractice, does not give rise to a constitutional violation."); *Farmer,*

511 U.S. at 837 (To make out a deliberate indifference claim, a plaintiff must show "more than

ordinary lack of due care for the prisoner's interests or safety.")  *See also Iqbal,*129 S. Ct. at

1949 (facts that are merely consistent with a defendant's liability fail to establish a plausible

claim for relief).  In fact, it appears likely that Defendant Wilson's failure to schedule Plaintiff's

appointment was simply a mistake as Plaintiff was ultimately seen for a follow-up appointment

on June 25, 2012—only one-and-a-half months after the request to check on the status of

Plaintiff's appointment.  (SAC ¶ 39.)

Notably, Plaintiff's allegations are distinguishable from the cases where the Tenth Circuit

has found a deliberate indifference based on a defendant's failure to discharge her role as a

gatekeeper.  For example, in *Sealock,* the Tenth Circuit found deliberate indifference where,

upon the plaintiff informing the defendant that he believed he was having a heart attack, the

defendant "*refused* to transport [the plaintiff] immediately to a doctor or hospital because it was

snowing outside and it would take time to warm up the prison van for transportation.  218 F.3d at

1210 (emphasis added).  Similarly, in *Mata v. Saiz,* 427 F.3d 745, 756 (10th Cir. 2005), the

Tenth Circuit found deliberate indifference where the defendant knew the plaintiff was suffering from chest pains, but refused to notify a medical professional or seek treatment for the plaintiff. Comparing Plaintiff's allegations with these cases, the court cannot find that Defendant Wilson's one-time failure to inquire into or schedule an appointment for Plaintiff's hip osteotomy was done with *deliberate* indifference to Plaintiff's serious medical needs. *Cf. Burgess v. Raya,* Case No. 1:11-cv-00921, 2013 WL 5183941, at *1 (E.D. Cal. Sept. 13, 2013) (affirming magistrate judge's finding that alleged failure to schedule a single doctor's appointment for asthma and bronchitis failed to demonstrate  deliberate indifference.)

Accordingly, the court finds that Plaintiff fails to state a claim pursuant to § 1983 against Defendant Wilson for violations of his Eighth Amendment rights.  Therefore, Defendants' Partial Motion to Dismiss is properly granted with respect to this claim.

WHEREFORE, for the foregoing reasons, I respectfully

RECOMMEND that Defendants' "Partial Motion to Dismiss."  (Doc. No. 155) be GRANTED and that Plaintiff's second, fifth, and sixth claims for relief be DISMISSED with prejudice.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the district court on notice of the basis for the objection will

not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's

report and recommendation must be both timely and specific to preserve an issue for de novo

review by the district court or for appellate review." *United States v. One Parcel of Real Prop.*

*Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to

make timely objections may bar *de novo* review by the district judge of the magistrate judge's

proposed findings and recommendations and will result in a waiver of the right to appeal from a

judgment of the district court based on the proposed findings and recommendations of the

magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's

decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection

does not preclude application of the "firm waiver rule");  *One Parcel of Real Prop.*, 73 F.3d at

1059-60 (a party's objections to the magistrate judge's report and recommendation must be both

timely and specific to preserve an issue for *de novo* review by the district court or for appellate

review);  *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir.

1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had

waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342,

1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal

the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 11th day of August, 2014.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge