IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 11-cv-02050-PAB-KMT

MICHAEL TIVIS,

    Plaintiff,

v.

BEVERLY DOWIS, in her individual and official capacity as Health Service Administrator for SCF,
NICOLE WILSON, in her individual capacity,
DR. PAULA FRANTZ, in her individual and official capacity as Chief Medical Officer for the Colorado Department of Corrections,
MEGHAN REED, in her individual capacity and official capacity as ADA Inmate Coordinator for the State of Colorado,
PHYSICIAN HEALTH PARTNERS, INC., d/b/a Correctional Health Partners, a Colorado corporation, and
DR. STEVEN KREBS, in his individual capacity.

    Defendants.

_____

**ORDER**
_____

This matter is before the Court on the Recommendation of United States Magistrate Judge Kathleen M. Tafoya (the "Recommendation") filed on February 13, 2015 [Docket No. 221]. The magistrate judge recommends that the Court grant in part two motions for summary judgment: one filed by defendants Physician Health Partners ("PHP") and Dr. Steven Krebs [Docket No. 181] and one filed by defendants Beverly Dowis, Nicole Wilson, and Meghan Reed (the "CDOC defendants") [Docket No. 190]. Both Dr. Krebs and plaintiff filed timely objections to the Recommendation. Docket Nos. 222, 226.

The Court will "determine de novo any part of the magistrate judge's disposition

that has been properly objected to." Fed. R. Civ. P. 72(b)(3). In the absence of a proper objection, the Court may review a magistrate judge's recommendation under any standard it deems appropriate. *See Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991); *see also Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("[i]t does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a de novo or any other standard, when neither party objects to those findings"). An objection is proper if it is specific enough to enable the Court "to focus attention on those issues–factual and legal–that are at the heart of the parties' dispute." *United States v. 2121 East 30th Street*, 73 F.3d 1057, 1059 (10th Cir. 1996).

## I. STANDARD OF REVIEW

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

## II. ANALYSIS

Plaintiff is an inmate at the Sterling Correctional Facility ("SCF"). Docket No. 138

at 2, ¶ 1. Plaintiff brings three claims under 42 U.S.C. § 1983 for violations of the Eighth Amendment against defendants Dowis, Wilson, and Krebs, a claim for violations of the Americans with Disabilities Act ("ADA") against defendants Frantz, Reed, and Dowis, a claim for violations of the Rehabilitation Act of 1973 against defendants Reed and Dowis, a state law claim for negligence against PHP and Dr. Krebs, and a state law breach of contract claim against PHP.[1] Plaintiff alleges that defendants denied and delayed a surgery that plaintiff's health care providers recommended, which was necessary to treat a life-threatening staph infection that plaintiff contracted as a result of a defective implant installed during a 2009 total hip replacement surgery. Docket No. 138. Further relevant facts are set forth in detail in the Recommendation, *see* Docket No. 221 at 4-11, and will not be recited here except as relevant to the Court's de novo review.

There is no question that Mr. Tivis, through no fault of his own, suffered greatly due to his hip problems. He had the misfortune of receiving a defective hip implant, he experienced long delays in being evaluated, and, when PA Jurgens gave him hope that the hip replacement surgery would finally occur, he had to wait another seven months. However, the issues on the objections are limited to whether two players in the saga, Dr. Krebs and Ms. Dowis, have legal responsibility for the delays.

---

[1]On December 29, 2014, the Court granted defendants Dowis, Wilson, and Reed's Partial Motion to Dismiss, and dismissed plaintiff's Eighth Amendment claim against defendant Wilson as well as plaintiff's ADA and Rehabilitation Act claims. *See* Docket No. 220. Accordingly, the only remaining claim against the CDOC defendants is plaintiff's Eighth Amendment claim against defendant Dowis, and the CDOC defendants' motion is moot as to all other claims.

### A. Dr. Krebs' Objection

Dr. Krebs objects to the Recommendation's finding that a dispute of material fact exists as to whether he violated plaintiff's Eighth Amendment rights. The Eighth Amendment's ban on cruel and unusual punishment is violated if a defendant's "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain." *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). A claim for deliberate indifference has both an objective and a subjective component. To satisfy the objective component, a prisoner must demonstrate that his medical need is "objectively, sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A medical need is sufficiently serious if "it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (citation omitted). There is no dispute that plaintiff's condition satisfies the objective component of a deliberate indifference claim.

To satisfy the subjective component, a prisoner must demonstrate that the defendant acted with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. "'[D]eliberate indifference' is a stringent standard of fault." *Bd. of Cnty. Comm'r v. Brown*, 520 U.S. 397, 410 (1997). "[T]he subjective component is not satisfied, absent an extraordinary degree of neglect." *Self*, 439 F.3d at 1232. Instead, the defendant must "know[] of and disregard[] an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. That is, "the official must both be aware of facts from which the

inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

The Tenth Circuit has recognized three types of conduct which may constitute deliberate indifference in a prison medical case: (1) a medical professional failing to treat a serious medical condition; (2) a prison official preventing an inmate from receiving medical treatment; or (3) a prison official denying a prisoner access to medical personnel capable of evaluating the inmate's condition. *Sealock v. Colorado*, 218 F.3d 1205, 1211 (10th Cir. 2000). Plaintiff's complaint against Dr. Krebs invokes the second type of conduct, liability of a "gatekeeper."

With regard to the subjective component of the deliberate indifference test, the Recommendation found that summary judgment was precluded by a genuine issue of material fact as to whether Dr. Krebs knew that a January 10, 2012 Utilization Review ("UR") included a request to approve plaintiff's hip surgery. Docket No. 221 at 20. The UR, which requested "ambulatory surgery," stated in the comments section of the form, "[r]ecommend aspiration arthrography and hardware removal for potential infection. . . . scheduled for 1/13/2012. Urgent Request." Docket No. 183-2 at 2. The June 2012 UR, which ultimately approved the surgery, contained a more specific reference to a "left hip total hip arthroplasty osteotomy with replacement of antibiotic spacer." *Id.* at 4. The Recommendation found that the reference to "hardware removal for potential infection" could reasonably be read to refer to the surgery that plaintiff eventually had, described in the June 2012 UR as a "left hip total hip arthroplasty osteotomy with replacement of antibiotic spacer." The Recommendation further noted that, even if there was ambiguity as to whether Denver Health sought approval for both an

5

aspiration arthrography and an arthroplasty osteotomy, Dr. "Krebs could have inquired into the matter further." Docket No. 221 at 20. Plaintiff argues that the January 2012 UR included requests for both a procedure to determine the presence of infection and replacement of the defective hip joint. Thus, because the January 2012 UR only listed the aspiration arthrography – and not the hip surgery – as an approved procedure, the Recommendation found that a genuine dispute of fact exists as to whether Dr. Krebs knew of and disregarded plaintiff's need for surgery. *Id.*

Dr. Krebs argues, first, that the Recommendation improperly applied the subjective component of an Eighth Amendment claim by holding him to a standard of whether he "knew or should have known" of the risk. Docket No. 222 at 5-6. The Court agrees. "Deliberate indifference" for Eighth Amendment purposes "is a subjective standard requiring actual knowledge of a risk by the official." *Barney v. Pulsipher*, 143 F.3d 1299, 1307 n.5 (10th Cir. 1998). "It is not enough to establish that the official should have known of the risk of harm." *Id.* at 1310. The Court, therefore, disagrees with the magistrate judge's alternative finding that the mere ambiguity of the UR could support a finding that Dr. Krebs violated plaintiff's Eighth Amendment rights by failing to clarify the request. The Court will address the magistrate judge's finding that plaintiff has raised a genuine issue of material fact as to Dr. Krebs' actual knowledge below.

Dr. Krebs next argues that plaintiff cannot sustain his Eighth Amendment claim because the January 2012 UR was "approved as submitted." Docket No. 222 at 7. The Court disagrees. Although the January 2012 UR was "approved as submitted" the same day it was received and the space labeled "Approval Specifications/Comments" was left blank, *see* Docket No. 183-2 at 2, the common sense reading of the January

6

2012 UR is that only a single procedure ("1 PROCEDURE(S)") was approved, namely, the "arthrography."

Dr. Krebs argues that there is no evidence that establishes his personal involvement in the approval of the January 2012 UR.  *See* Docket No. 222 at 7, n.7; *see also* Docket No. 211 at 7-8 (disputing plaintiff's Statement of Additional Material Facts #5 and arguing that there is no evidence that Dr. Krebs' testimony referred to the January 2012 UR).  Plaintiff does not address this argument in his response to Dr. Krebs' objection.  *See* Docket No. 229.

The Court agrees with Dr. Krebs that the deposition testimony cited by plaintiff and by the magistrate judge is vague and does not lead to a reasonable inference that Dr. Krebs personally participated in the decision concerning the January 2012 UR. Plaintiff's counsel asked Dr. Krebs generally what he remembered about Mr. Tivis' case, but never asked Dr. Krebs specifically about the January 2012 UR:

> Q.  Okay.  Now, in Mr. Tivis' case, do you have an understanding of what it was that the provider was requesting in terms of treatment?
>
> A.  Well, after reviewing this case last week, as I recall once, I was asked – I can't remember – I think – well, I'd love to see the documents, but I think what you're getting at is, was I asked, does he need to see the orthopedist for a hip replacement?  To which the response was authorized.
>
> Q.  My question was: Having reviewed the complaint and any other information, do you have a sense of what the orthopedic surgeon at Denver Health was asking to do to treat Mr. Tivis?
>
> A.  I do.
>
> Q.  What's your understanding of what that was?
>
> A.  In having reviewed the document, there was a request because there was a belief he had an infected hip that needed attention, acutely.  We were asked, you know: Does this guy need to see ortho?  And the answer was

yes.

Docket No. 181-1 at 12-13, 28:16-29:11. Plaintiff's questions to Dr. Krebs were not specific about whether he was being asked about the January 10, 2012 UR or the June 25, 2012 UR, and Dr. Krebs' answers do not suggest which UR he had in mind. As a result, this colloquy does not support an inference that Dr. Krebs was referring to the January 2012 UR as opposed to the June 2012 UR.

Plaintiff's counsel's failure to differentiate the various URs in the record in his questions to Dr. Krebs is not a mere technical deficiency. Plaintiff's medical records show that PHP, Dr. Krebs' employer, received at least three URs for plaintiff.[2] The sole basis for plaintiff's Eighth Amendment claim against Dr. Krebs is Dr. Krebs' alleged denial of a portion of the January 2012 UR.[3] And yet plaintiff cites no testimony or admission by Dr. Krebs from which a reasonable fact-finder could infer that Dr. Krebs responded to the January 2012 UR. Instead, plaintiff's counsel and Dr. Krebs referred generally to an unspecified authorization.[4] Moreover, Dr. Krebs repeatedly testified that, to his recollection, he approved all requested care for

---

[2] *See* Docket No. 183-2 at 2-4 (three authorization requests dated, respectively, January 10, 2012, February 8, 2012, and June 25, 2012).

[3] There is no dispute that Dr. Krebs immediately approved the hip replacement requested in the June 2012 UR.

[4] *See* Docket No. 181-1 at 12, 28:16-18 ("Now, in Mr. Tivis' case, do you have an understanding of what it was that the provider was requesting in terms of treatment?"); 16, 36:8-11 ("once you reviewed the referral request and you said, Whew, this is bad, what happens next in terms of the process at CHP?"); *see also* Docket No. 197-1 at 7, 58:24-25 ("Is there a chance you may have seen [a treatment note dated January 9, 2012] when you were asked to review the referral request?").

8

plaintiff,[5] yet plaintiff never asked Dr. Krebs why, or if, he denied the request for "hardware removal" in the January 2012 UR.  Although the Court must resolve all reasonable inferences that may be drawn from the record in plaintiff's favor, *Stover v. Martinez*, 382 F.3d 1064, 1070 (10th Cir. 2004), the Court cannot overlook plaintiff's failure to present any evidence of Dr. Krebs' personal participation in the approval or partial approval of the January 2012 UR.[6]  Absent evidence of personal participation, plaintiff cannot show that there is a genuine dispute of material fact as to Dr. Krebs' knowledge of plaintiff's serious medical need.  Summary judgment is appropriate.[7]

---

[5]*See* Docket No. 181-1 at 12, 28:20-24 ("I recall once . . . [I was] asked, does [plaintiff] need to see the orthopedist for a hip replacement? To which the response was authorized"); 13, 29:7-11 ("there was a request because there was a belief he had an infected hip that needed attention, acutely.  We were asked, you know: Does this guy need to see ortho?  And the answer was yes."); 15, 33:9-13 ("Q.  What do you recall your role being in that process as it related to Mr. Tivis?  A.  What I recall is, having reviewed the documents, that his case was sent to me.  I reviewed the case and authorized the requested care."); 19, 39:4-10 ("Q.  You understand that it was something that required immediate attention because it was life-threatening, correct?  A.  That's why I immediately authorized it.  Q.  I understand.  So you did your part by immediately authorizing the procedure, correct?  A.  Yes.).

[6]There is another section of Dr. Krebs' deposition that comes close to leading to an inference that he saw the January 2012 UR.  After being asked, "can we agree he didn't get the procedure quickly?", Dr. Krebs answered, "Assuming the hypothetical five-month delay that you gave me is anywhere correct, then I would agree.  If the person is known to have an infection, it shouldn't take five months to get it."  Docket No. 181-1 at 20, 41:15-20.  It could be argued that, for there to be a five-month delay, Dr. Krebs must be assuming that he saw the UR in January 2012.  However, the hypothetical posed to Dr. Krebs is not included in the excerpts and it is impossible to infer that Dr. Krebs saw the January UR as opposed to someone else from PHP.

[7]The magistrate judge looked to other evidence in the record to support that the January 2012 UR requested surgery and not a mere aspiration procedure.  In particular, the Recommendation notes that the physician's assistant who submitted the January 2012 UR believed that she had requested surgery.  *See* Docket No. 221 at 21.  This is irrelevant to plaintiff's claim against Dr. Krebs, however, as the physician assistant's belief as to what procedure she requested has no bearing on whether Dr. Krebs

### B.  Plaintiff's Objection

Plaintiff does not object to the Recommendation's findings that he abandoned his breach of contract claim against PHP and Dr. Krebs, that his negligence claim against PHP is barred by the corporate practice of medicine doctrine, and that plaintiff's negligence claim against Dr. Krebs fails because plaintiff did not file a certificate of review as required by Colo. Rev. Stat. § 13-20-602(1)(a).[8]  The Court has reviewed these aspects of the Recommendation and is satisfied that there is "no clear error on the face of the record."[9]  Fed. R. Civ. P. 72(b) Advisory Committee Notes.

Plaintiff's first objection is that the Recommendation omitted relevant material evidence from its "Statement of Facts."  Docket No. 226 at 3.  Plaintiff highlights testimony from defendant Dowis in another case where she stated that it was her constitutional obligation to do everything in her power to make sure that the offender is getting the care that he needs, that defendant Dowis had at times contacted the CDOC's "centralized scheduling unit" to check on the status of follow-up appointments, that she was aware that untimely processing of specialist recommendations could lead

---

subjectively understood and disregarded an excessive risk to plaintiff's health.  *Farmer*, 511 U.S. at 837 ("the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference").

[8]*See* Docket No. 226 at 1 (objecting only as to the recommendation that summary judgment should enter against plaintiff on his Eighth Amendment claim against defendant Dowis, and "not object[ing] . . . regarding [plaintiff's] other remaining claims").

[9]This standard of review is something less than a "clearly erroneous or contrary to law" standard of review, Fed. R. Civ. P. 72(a), which in turn is less than a de novo review.  Fed. R. Civ. P. 72(b).

to delays in treatment, and that she knew there were flaws in the system that caused delays in treatment. *Id.* at 3-4. Plaintiff also points to testimony from defendant Dowis that she had, in the past, contacted Dr. Krebs regarding treatment for offenders, and that in her response to one of plaintiff's written grievances, she stated that she would follow up the next week and would "pass on any information to [plaintiff] as soon as [she] get[s] it." *Id.* at 3-4. Plaintiff's objection does not appear directed at a particular finding, and plaintiff does not articulate how the Recommendation's failure to recite these specific facts influenced its finding. The objection is therefore not specific enough to "focus attention on those issues . . . that are at the heart of the parties' dispute," and is not properly before the Court. *2121 East 30th Street*, 73 F.3d at 1059. Nonetheless, the Court will consider these additional facts as part of its de novo review regarding the remainder of plaintiff's objections.

Plaintiff's second objection is that the Recommendation mischaracterizes plaintiff's claim. Docket. No. 226 at 4-5. Plaintiff takes issue with the Recommendation's statement that plaintiff "appears to argue that because Defendant Dowis generally knew that Plaintiff had a life-threatening medical issue, she was under an affirmative and ongoing duty to arrange for immediate outside care." *Id.* at 5 (citing Docket No. 221 at 17). According to plaintiff, his "claims against Dowis are far more specific and . . . specifically allege that Dowis knew the medical condition from which Mr. Tivis suffered, knew that specialists sought approval of treatment of the condition with surgical intervention, yet despite that knowledge refused to intervene when delay of that approval or delay of that treatment became obvious." *Id.* Plaintiff's second objection, like his first, does not explain how this different characterization invalidates

11

the Recommendation's findings.  The Court will, however, consider the evidence of defendant Dowis' knowledge of plaintiff's condition and its relevance to plaintiff's Eighth Amendment claim in performing its review.

Plaintiff's third objection is that the Recommendation applied the wrong legal standard in assessing defendant Dowis' liability as a gatekeeper.  Docket No. 226 at 6-7.  Plaintiff claims that the Recommendation's interpretation of the gatekeeper liability standard was incomplete and points out that gatekeeper liability can be found where an individual "delays or refuses to fulfill that gatekeeper role."  *Id.* at 6 (citing *Sealock*, 218 F.3d at 1211).  Plaintiff also points out that an inmate need not show that the defendant believed that the inmate would be harmed, but rather need only show that the official "acted or failed to act despite his knowledge of a substantial risk of serious harm."  *Id.* at 7 (citing *Farmer*, 511 U.S. at 842) (emphasis removed).  Plaintiff argues that the subjective prong of the deliberate indifference test can be proved with circumstantial evidence.  *Id.* (citing *Farmer*, 511 U.S. at 842).  Once again, however, plaintiff does not explain how the additional citations he provides regarding gatekeeper liability amount to an error in the Recommendation's legal conclusions, and his objection is therefore not specific enough to focus the attention on those legal issues at the heart of the parties' dispute.  *2121 East 30th Street*, 73 F.3d at 1059.

Plaintiff's fourth and final objection is that the Recommendation draws "improper inferences."  Docket No. 226 at 7.  The Court will address each purportedly improper inference in turn.

Plaintiff argues that the Recommendation's finding, Docket No. 221 at 18, that defendant Dowis did not deny plaintiff access to medical personnel capable of

evaluating his condition, is unsupported. Docket No. 226 at 8. Plaintiff maintains that his March 13, 2012 grievance[10] permits the inference that defendant Dowis was aware that the treatment plaintiff was receiving at SCF was inadequate. *Id.* The Court disagrees. Plaintiff's grievance informed Ms. Dowis that he was in considerable pain and that he believed that remaining at SCF might exacerbate his infection because "it creates favorable conditions for bacterial growth." Docket No. 207-2 at 2. As a result, plaintiff requested that he be "immediately placed in a hospital." *Id.* Ms. Dowis responded that, based on Dr. Fauvel's assessment that plaintiff's condition was not life threatening, plaintiff did not require hospitalization. *Id.* Ms. Dowis' decision to deny plaintiff's request for immediate hospitalization in response to plaintiff's concern that SCF "creates favorable conditions for bacterial growth" is not evidence that Ms. Dowis "intentionally den[ied] or delay[ed] access to medical care." *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). Plaintiff cites no authority, and the Court is aware of none, that imposes an obligation on gatekeepers to second-guess the determinations of medical professionals to avoid liability for violating the Eighth Amendment rights of inmates.

Plaintiff next argues that, despite Dr. Fauvel's assessment that plaintiff's condition was not life-threatening, Ms. Dowis had an "obligation to intervene after she was made aware of a troubling delay in the approval of Mr. Tivis' surgery," and that, as a result, a jury could find that Ms. Dowis' failure to inquire into the cause of the delay

---

[10]The parties and the Recommendation mistakenly cite March 14, 2012 as the date of plaintiff's grievance. *Compare* Docket No. 221 at 18 *and* Docket No. 226 at 8 *with* Docket No. 207-2 at 2.

13

was equivalent to denying plaintiff access to treatment.  Docket No. 226 at 9.  Plaintiff's argument suggests that a gatekeeper is obligated not only to provide inmates with access to necessary care, but also to monitor that care and intervene when the gatekeeper believes the care to be insufficient.  The Court finds no support for such an expansive interpretation of a gatekeeper's duties on the facts of this case.  The Tenth Circuit has explained that a gatekeeper can be liable for deliberate indifference when she "prevent[s] an inmate from receiving treatment or den[ies] him access to medical personnel capable of evaluating the need for treatment."  *Sealock*, 218 F.3d at 1211.  Examples of failures to fulfill this gatekeeper role that the Tenth Circuit has found sufficient to create a dispute of fact include failing to call an ambulance when informed that an inmate has unexplained chest pain,[11] ignoring medical professionals' recommendations for immediate care,[12] and failing to seek medical attention for an incarcerated person who appeared to be unconscious after having been beaten by police officers.[13]  Plaintiff's claim against Ms. Dowis is far more attenuated than these examples and seeks liability against Ms. Dowis not for denying plaintiff care, but for failing to advocate on his behalf when his surgery was delayed.  The record shows

---

[11] *See Sealock*, 218 F.3d at 1211; *see also Mata v. Saiz*, 427 F.3d 745, 757 (10th Cir. 2005) (finding that a prison official confronted with an inmate with chest pain was "required to notify either a physician, physician assistant, or nurse practitioner" to fulfill her gatekeeper role).

[12] *See generally King v. Patt*, 525 F. App'x 713 (10th Cir. 2013) (affirming denial of summary judgment where prison officials ignored doctor's recommendation that the inmate immediately see an orthopedist and nurse's recommendation that he see an opthalmologist).

[13] *See Estate of Booker v. Gomez*, 745 F.3d 405, 432 (10th Cir. 2014).

that, to Ms. Dowis' knowledge, plaintiff's surgery had been requested and was awaiting approval, and plaintiff was not in a life-threatening condition while he awaited that approval.  The Court finds that no reasonable jury could equate Ms. Dowis' failure to intervene in plaintiff's medical treatment with deliberately denying him care.

Plaintiff also argues that, because Ms. Dowis wrote "Relief granted" in response to his March 13, 2012 grievance, a jury could infer that she acknowledged that plaintiff required immediate hospitalization, but failed to follow through.  Docket No. 226 at 10.  This argument finds no support in the record.  In response to plaintiff's grievance, Ms. Dowis wrote that, because plaintiff's condition was not life threatening, "[i]t is medically sound to continue to house [plaintiff] at SCF."  Docket No. 207-2 at 2.  No reasonable jury could infer from Ms. Dowis' response that she believed that plaintiff needed to be hospitalized.

Next, plaintiff argues that a jury could draw an inference of deliberate indifference from Ms. Dowis' promise to check on the status of plaintiff's surgery (after learning that the orthopedic clinic was waiting for approval from the insurance company) and the fact that plaintiff did not hear from Ms. Dowis subsequently.  Docket No. 226 at 11.  The Court disagrees.  No reasonable jury could find that failing to check on the status of insurance approval for a requested procedure (while plaintiff was receiving ongoing treatment at SCF) constitutes deliberately denying plaintiff care.

Finally, plaintiff objects to the magistrate judge's "failure to consider" that Ms. Dowis was "aware of flaws in the system she supervised causing appointments with outside providers to fall into a 'black hole' further delaying treatment.'"  Docket No. 226 at 11.  Plaintiff's argument again conflates the role of "gatekeeper" with that of

15

"advocate." As discussed above, however, a gatekeeper is only liable for an Eighth Amendment violation when she prevents an inmate from receiving treatment or denies him access to appropriate treatment.

In sum, plaintiff has not produced evidence that is sufficient to create a dispute of fact as to whether Ms. Dowis was deliberately indifferent to his serious medical need. Summary judgment is therefore appropriate as to plaintiff's Eighth Amendment claim against Ms. Dowis.

## II. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the Recommendation of United States Magistrate Judge [Docket No. 221] is **ACCEPTED** in part. It is further

**ORDERED** that defendants Physician Health Partners, Inc. and Dr. Steven Krebs' Motion for Summary Judgment [Docket No. 181] is **GRANTED**. It is further

**ORDERED** that defendants Beverly Dowis, Nicole Wilson, and Meghan Reed's Motion for Summary Judgment [Docket No. 190] is **GRANTED** in part and **DENIED** in part. It is **GRANTED** as to plaintiff's first claim for relief against defendant Beverly Dowis, and **DENIED** as moot as to plaintiff's second, fifth, and sixth claims for relief. It is further

**ORDERED** that plaintiff's first, third, fourth, and seventh claims for relief are dismissed with prejudice. It is further

**ORDERED** that, within 14 days of the entry of judgment, defendants may have their costs by filing a bill of costs with the Clerk of the Court. It is further

**ORDERED** that this case is dismissed in its entirety.

DATED March 17, 2015.

BY THE COURT:

 s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge